Lena **RANSBURG**, Personal Representative of the Estate of E.M. Ransburg, Appellant,

v.

Mildred M. **KIRK**, Hershel Kirk, Marion County Board of Commissioners, City of Indianapolis, and Auditor of Marion County, Appellees.

No. 49A04–8612–CV–392.

Court of Appeals of Indiana, Fourth District.

June 30, 1987.

---

Robert L. Hartley, Jr., Martin, Wade, Hartley & Hollingsworth, Indianapolis, for appellant.

Robert A. Claycombe, William F. Kennedy, Jr., Kothe, Claycombe, Kortepeter & McPherson, Indianapolis, for appellees.

MILLER, Judge.

Lena Ransburg, executrix of the estate of her late husband E.M. Ransburg, appeals an adverse judgment in a quiet title action she brought as holder of a tax deed against Mildred and Hershel Kirk, the delinquent record owners of the property. Also named as defendants were the Marion County Board of Commissioners, the City of Indianapolis, and the Marion County Auditor through whom Ransburg claimed title. The parties stipulated to the significant facts. The trial court found Ransburg failed to carry her burden of proof and concluded the county's quitclaim deed passed no interest in the property to Ransburg. Judgment was entered for the Kirks.

Ransburg appeals and argues (1) the trial court erred in failing to assign the burden of proving the tax sale was invalid upon the Kirks and instead required Ransburg to show the tax sale valid; (2) the trial court erred in concluding the Notices of Sale at Public Auction were defective because they did not contain the words "county courthouse"; (3) the trial court erred in concluding the Public Notice of Tax Sale required under I.C. 6–1.1–24–2 must contain a legal description of the property; (4) the trial court erred in concluding the 1981 Notice of Tax Sale sent to the Kirks did not comply with I.C. 6–1.1–24–4 because the parties stipulated all requirements for tax sale were complied with and the stipulation is binding upon the court; and (5) the trial court erred in concluding I.C. 6–1.1–24–6 requires property to be offered for sale in two (2) consecutive calendar years if it becomes impossible to hold a tax sale in one year.

We reverse and remand with instructions to enter judgment in favor of Ransburg.

### FACTS

Mildred and Hershel Kirk were the owners of record of real property located in Marion County, commonly known as 2443 Northwestern Avenue, Indianapolis, Indiana. The Kirks failed to pay the real estate taxes on that property when they were due and the property was offered at auction sale, but did not sell, at the Marion County Tax Sales in 1979 and 1981. There was no tax sale in Marion County in 1980. Pursuant to IND.CODE § 6–1.1–24–6, the Marion County Auditor issued a tax sale certificate to Marion County on the first Monday of December, 1981; a deed was issued to the County one year later. The Marion County Board of Commissioners, through its Department of Public Works, offered the property for sale at auction. Lena Ransburg's late husband, E.M. Ransburg, paid $7,000 for the property and the county executed a quitclaim deed to him on February 23, 1984. The Kirks later refused to acknowledge the validity of the title of E.M. Ransburg and refused to surrender possession to him.

Lena Ransburg brought suit to quiet title and the Kirks raised numerous defects in the tax sale proceedings as affirmative defense. The parties stipulated to the following facts:

"1. The Plaintiff is the duly appointed and acting Executrix of the estate of E.M. Ransburg.

2. On February 23, 1984, the Marion County Board of Commissioners, City of Indianapolis, quitclaimed the property known as Graceland Park, Lot 35, Parcel Number 1007698, commonly known as 243 Northwestern Avenue, Indianapolis, Indiana, to E.M. Ransburg.

3. On December 6, 1982, the Auditor of Marion County conveyed the said real estate to the Marion County Board of Commissioners, City of Indianapolis, by means of a tax deed. That instrument was recorded in Marion County Recorder's office as Instrument Number 83–06118.

4. The Defendants Mildred M. Kirk and Herschel [sic] Kirk failed to pay the real estate taxes on said property when they were due.

5. The Defendant Mildred M. Kirk refuses to acknowledge the validity of the title of E.M. Ransburg and surrender possession to the Plaintiff. The Defendant Mildred M. Kirk claims ownership of the property.

6. The Plaintiff and the Defendants Kirk are in agreement that, with the exception of those items listed below, all statutory requirements in respect of the tax sale and conveyance to E.M. Ransburg were complied with.

7. The Plaintiff and the Defendants Kirk stipulate to the truth of the following facts but disagree on their legal effect:

(a) The delinquent list was not recorded in the office of the Recorder of Marion County. It was recorded on form 137 of the tax sale record. The Defendants assert this was a violation of IC 6–1.1–24–1. The Plaintiff disputes this.

(b) The notice required by IC 6–1.1–24–2 did not state that the sale was to be held at the 'County Courthouse.' Said notice stated: 'Said sale to be held on the second floor of the City-County Building in the Public Assembly Room.' The Defendants Kirk claim this is a violation of the above statute. The Plaintiffs disagree.

(c) The 1981 notice required by IC 6–1.1–24–2 does not contain a description of the land as it appears in the tax duplicate. A copy of the notice is attached to this Stipulation as Exhibit A.

(d) The Auditor has no copy of the 1981 notice required by IC 6–1.1–24–4.

(e) The property was offered for sale in 1979. It was not offered for sale in 1980. It was offered for sale in 1981. There was no tax sale in 1980. The Defendants Kirk contend this is a violation of IC 6–1.1–24–6. The Plaintiff disagrees with this interpretation of the statute."

Record, pp. 14–16. Ransburg introduced evidence at trial including letters testimentary, auction purchase statement, the quitclaim deed, and the Manual for County Auditors of Indiana. The trial court made the following partial findings of fact and conclusions of law based upon the parties' stipulations and the additional evidence admitted at trial:

*"Findings of Fact*

1. The Plaintiff Lena Ransburg is the duly appointed and acting Executrix of the Estate of E.M. Ransburg.

2. On February 23, 1984, the Marion County Board of Commissioners, City of Indianapolis, executed a quitclaim deed of the property known as Graceland Park, Lot 35, Parcel Number 1007698, commonly known as 2443 Northwestern Avenue, Indianapolis, Indiana, to E.M. Ransburg.

3. On December 6, 1982, the Auditor of Marion County executed a tax title deed of said real estate to the Marion County Board of Commissioners, City of Indianapolis. That instrument was recorded in the Marion County Recorder's office as Instrument Number 83–06118.

4. The Defendants, Mildred M. Kirk and Hershel Kirk, failed to pay the real estate taxes on said property when they were due.

5. Plaintiff, on behalf of the estate of E.M. Ransburg and the heirs and devisees of E.M. Ransburg, claims title to said real estate as against all defendants.

6. The Defendant Mildred E. Kirk claims ownership of the property and refused to acknowledge the validity of the title of E.M. Ransburg and surrender possession to the Plaintiff.

7. The County Auditor has no copy of the 1981 notice to owner of sale.

8. Said property was offered for sale in 1979, was not offered for sale in 1980, and was offered for sale in 1981.

9. Said property was not offered for sale for two consecutive years.

10. The 1981 notice of sale at public auction failed to contain a legal description of said property.

11. The 1979 and 1981 notices of sale at public auction failed to state that the sales were to be held at the 'County Courthouse'.

*Conclusions of Law*

1. The Plaintiff has failed to prove that the contents of the 1981 notice of sale sent to the Defendants Kirk complied with IC 6–1.1–24–4.

2. Said property was not offered for sale for two consecutive years in violation of IC 6–1.1–24–6.

3. The 1981 notice of sale at public auction failed to contain the legal description of said property in violation of IC 6–1.1–24–2.

4. The 1979 and 1981 notices of sale at public auction failed to state that the sales were to be held at the 'County Courthouse' in violation of IC 6–1.1–24–2.

5. The Plaintiff has failed to prove that the statutority mandated procedure for the tax sale of said property was complied with.

6. Non-compliance with the statutority mandated tax sale procedure rendered the execution of the tax title deed to the Marion County Board of Commissioners, City of Indianapolis, ineffective to convey title to said property to the Board of Commissioners.

7. Since the Board of Commissioners acquired no title to said property, no interest in said property was subsequently quitclaimed by the Board to E.M. Ransburg.

8. Since Plaintiff has not proved that title to said property has passed to E.M. Ransburg, Plaintiff's action to quiet title in said property fails.

JUDGMENT

Plaintiff having failed to carry their burden of proof Judgment is entered for the defendant."

Record, pp. 56–58.

ISSUES

Ransburg appeals and raises five issues which we have restated, for our consideration:

I. Whether the plaintiff in a quiet title action, who claims title from a tax deed, has the burden of proving the validity of all tax sale proceedings pursuant to IND. CODE 6–1.1–24–11 or whether the tax sale proceedings are presumed valid and the defendant delinquent former owners bear the burden of rebutting that presumption.

II. Whether the trial court erred in concluding I.C. 6–1.1–24–2, Public Notice of Tax Sale, requires the notice to contain the specific words "county courthouse".

III. Whether the trial court erred in concluding I.C. 6–1.1–24–2, Public Notice of Tax Sale, requires the notice to contain a legal description of the property.

IV. Whether the trial court erred in concluding the 1981 notice of tax sale did not comply with I.C. 6–1.1–24–4 when the parties stipulated all requirements for tax sale were complied with and the parties stipulation is binding upon the court.

V. Whether the trial court erred in concluding I.C. 6–1.1–24–6 requires property to be offered for sale in two (2) consecutive calendar years.

DECISION

The record in this case does not reveal a request by either party or a motion by the court for findings of fact and conclusions of law pursuant to Trial Rule 52(A). The trial court was not required to make special findings by Trial Rule 52(A).

We conclude the trial court elected to make partial findings of fact and conclusions of law at the close of the case,[1] and therefore our standard of review is prescribed by Trial Rule 52(D) which provides that:

"... findings of fact with respect to issues upon which findings are not required shall be recognized as findings only upon the issues or matters covered thereby and the judgment or general finding, if any, shall control as to the other issues or matters which are not covered by such findings."

Here, the significant facts were stipulated by the parties. Ransburg attacks the trial court's conclusions of law which derived

1. See Moridge Mfg. Co. v. Butler (1983), Ind. App., 451 N.E.2d 677, 681 (findings did not invoke T.R. 52(A) since request was made orally after the evidence commenced); Greiner v. Greiner (1979), 179 Ind.App. 61, 384 N.E.2d 1055 (matters not expressly found are treated as having been determined on a general finding when partial findings made); Hunter v. Milhous (1973), 159 Ind.App. 105, 305 N.E.2d 448.

from the parties stipulations. Where the trial court's conclusions of law are attacked as erroneous, the Court of Appeals looks solely to the evidence most favorable to the judgment, together with all reasonable inferences therefrom, to decide whether the evidence is without conflict and leads to but one conclusion, which is contrary to that reached by the trial court. *Ashland Pipeline Co. v. Indiana Bell Telephone Co., Inc.* (1987), Ind.App., 505 N.E.2d 483; *Stone v. Manship* (1987), Ind.App., 505 N.E.2d 155. Upon appeal from a negative judgment, this court presumes the trial court committed no error and applied the law correctly. The party against whom judgment was entered has the burden of demonstrating reversible error on appeal. *Santini v. Consolidated Rail Corp.* (1987), Ind.App., 505 N.E.2d 832. With this standard of review in mind, we turn to the issues raised by Ransburg.

## I. *Burden of Proof*

Ransburg argues:

"The most serious error by the trial court, which taints all of its conclusions, was the failure of the court to assign to defendants Kirk the burden of proving that the tax sale was invalid.

In the court's Conclusion of Law Number 1 it stated:

The Plaintiff has failed to prove that the contents of the 1981 notice of sale sent to the Defendants Kirk complied with IC 6–1.1–24–4.

(R., p. 57). In its Conclusion of Law Number 5, the court said:

The Plaintiff has failed to prove that the statutorily mandated procedure for the tax sale of said property was complied with.

(R., p. 58). The trial court placed upon the plaintiff Ransburg, who was claiming chain of title from a tax deed, the burden of proving the regularity and validity of the tax sale proceedings. Instead, the court should have placed upon defendants Kirk the burden of proving that the tax sale was invalid."

Appellant's Brief, p. 10–11.

Kirk responds that the alleged error of misplacing the burden of proof was harm-less because the stipulated evidence satisfied the Kirk's burden of proving noncompliance with the tax sale statute.

■ We find the trial court misplaced the burden of proving compliance with the tax sale statute upon the holder of the county tax sale deed. I.C. 6–1.1–24–11 provides:

"Certificate of sale as presumptive evidence

Sec. 11. (a) *A certificate of sale* issued under section 9 of this chapter is *presumptive evidence of:*

(1) the truth of the statements contained in the certificate;

(2) the interest of the purchaser in the real property described in the certificate;

(3) the regularity and validity of all proceedings related to the taxes or special assessments for which the real property was sold; and

(4) *the regularity and validity of all proceedings related to the sale of the real property.*

(b) After two (2) years from the issuance of a certificate of sale, evidence may not be admitted in any court to rebut a presumption prescribed in subsection (a) of this section unless the certificate of sale was fraudulently procured. After four (4) years from the issuance of the certificate of sale, evidence may not under any circumstances be admitted in any court to rebut such a presumption."

This section of the tax sale chapter is clear and unambiguous and needs no construction. All proceedings related to the sale of the property were presumptively regular and valid and the trial court should have placed the burden of rebutting this presumption upon defendant's Kirk, the delinquent record owners of the property. The most recent Indiana case law is in accord with the statutory mandate. In *Lenard v. Adams* (1981), Ind.App., 425 N.E.2d 211, the original owner's general allegations in her complaint that the tax sale and notice statutes were not properly followed failed to rebut the *prima facie* evidence of the regularity and validity of all tax sale pro-

ceedings established by the certificate of sale. In *Burkhart v. Millikan* (1921), 76 Ind.App., 480, 130 N.E. 837, this court held that the defendant record owner bears the burden of showing irregularities in the tax sale proceeding to defeat the holder of a tax deed's title. *See also, Knotts v. Tuxbury* (1917), 69 Ind.App. 248, 117 N.E. 282 (tax deed establishes *prima facie* title).

Thus, Ransburg's claim that the Kirks had the burden of proof is correct and the trial court's conclusion was wrong. We must therefore determine whether, as claimed by the Kirks, that although the trial court's conclusion regarding who carried the burden of proof was erroneous, still this error was harmless because the evidence supported the trial court's general judgment. In other words, we must determine whether the Kirks sustained their burden of proof and demonstrated the tax deed was invalid.

## II. *Public Notice of Tax Sale*

Ransburg claims the trial court erred in concluding that I.C. § 6–1.1–24–2, Public Notice of Tax Sale, requires the public notice to contain the specific words "county courthouse" in describing the location of the tax sale. Ransburg argues this error in statutory interpretation caused the trial court to wrongly conclude the Notices of Sale at Public Auction in this case were defective because they did not contain the words "county courthouse".

I.C. 6–1.1–24–2 requires that the public notice shall contain:

"[a] statement that the sale will be conducted *at a designated place in the county courthouse or on the county courthouse grounds.*" (emphasis added)

Kirk responds that public notice given here does not comply with the above statute because of the auditor's failure to use the words "county courthouse". Kirk states "Standing alone, this defect would probably not void a tax sale which was otherwise proper. However, when considered with other failures to follow the statute, it is cumulative ..." Appellee's Brief at p. 16.

The parties stipulation on this issue was as follows:

"The notice required by IC 6–1.1–24–2 did not state that the sale was to be held at the "County Courthouse." Said notice stated: 'Said sale to be held on the second floor of the City-County Building in the Public Assembly Room.' The Defendants Kirk claim this is a violation of the above statute. The plaintiffs disagree."

Record, p. 15.

The trial court's Conclusion of Law Number 4 was:

"The 1979 and 1981 notices of sale at public auction failed to state that the sales were to be held at the 'County Courthouse' in violation of IC 6–1.1–24–2."

Record, p. 58.

Neither counsel nor the court have found any case authority interpreting I.C. 6–1.1–24–2. The cardinal principal of statutory construction is to ascertain and give effect to the legislature's intent. *B & M Coal Corp. v. United Mine Workers of America* (1986), Ind., 501 N.E.2d 401; *Ross v. Schubert* (1979), 180 Ind.App. 402, 388 N.E.2d 623. There is nothing in the language of the statute or its punctuation to suggest the exact words "county courthouse" must be used. Rather, the clear intent of the statute is that notice state a location of the sale which is either in the county courthouse or on the county courthouse grounds. There is no indication the legislature intended to constrain the county auditor to use any specific words in the notice. The words "county courthouse" are neither capitalized, italicized, nor set off by quotation marks.

We find the trial court's conclusion that the statute requires the county auditor to use the words "county courthouse", when the sale was in fact held in the county courthouse building and was posted in an identifiable manner, is erroneous. If a statute is open to two interpretations, the presumption is that the legislature intended the more reasonable of the two, for the legislature cannot be presumed to have expected that a statute be applied in an illogical or absurd manner. *In re*

*Marriage of Lopp* (1978), 268 Ind. 690, 378 N.E.2d 414; *In re Adoption of Jackson* (1972), 257 Ind. 588, 277 N.E.2d 162.[2] As long as the public notice of tax sale describes "a designated place", and that place is "in the county courthouse or on the county courthouse grounds", then public notice complies with the statute. We find notice given here was in compliance with the statute. Any other construction would presume the legislature intended to do an absurd thing in enacting this statute.

### III. *Legal Description of the Property*

The trial court's Finding of Fact Number 10 was:

"The 1981 notice of sale at public auction failed to contain a legal description of said property."

Record, p. 57.

Trial court's Conclusion of Law Number 3 was:

"The 1981 notice of sale of public auction failed to contain the legal description of said property in violation of IC 6–1.1–24–2."

Record, p. 57–58. Ransburg claims the court's finding of fact is irrelevant and its conclusion of law is wrong. Kirk responds that the trial court correctly found the 1981 notice of sale at public auction failed to contain a legal description of the property, which is required under I.C. 6–1.1–24–2.

I.C. 6–1.1–24–2 provides:

"Notice of auction sale

Sec. 2. In addition to the delinquency list required under section 1 of this chapter, each county auditor shall prepare a notice. The notice shall contain:

(1) *a list of real property eligible for sale under this chapter ...*" (emphasis added)

**2.** *See also, State v. Lake Superior Court* (1986), Ind., 500 N.E.2d 737, 739; *Indiana State Highway Commission v. Bates and Rogers Construction, Inc.* (1983), Ind.App., 448 N.E.2d 321, 324; *Frost v. Review Board of Indiana Employment Security Division* (1982), Ind.App., 432 N.E.2d 459, 461.

**3.** I.C. 6–1.1–24–4 provides:
"Notice of sale to owner

Where the statutory language is clear and unambiguous, it is the duty of this court to give effect to the plain meaning of the statute. *Holland v. King* (1986), Ind.App., 500 N.E.2d 1229; *Indiana Collectors v. Conrad* (1984), Ind.App., 466 N.E.2d 768. The language employed by the legislature is clear. The county auditor shall prepare a notice and "the notice shall contain a list of real property eligible for sale". The statute does not direct the auditor to include "a legal description of the property" but rather specifies "a list of real property". Reading the tax sale statute as a whole, it is clear that the public notice specified in I.C. 6–1.1–24–2 is for the benefit of the buyers, not the delinquent record owners. Publication and posting are designed primarily to attract prospective purchasers to the tax sale. *See, Holland, supra,* 500 N.E.2d at 1234–35; footnote 3; *Walker v. City of Hutchinson* (1956), 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178; *New York City v. New York N.H. & H.R. Co.* (1953), 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333. It is not necessary to provide prospective buyers with a legal description of each property to attract them to the tax sale. Our legislature did not require a "legal description" of the property and we decline to graft this requirement upon the statute at issue. We conclude the trial court erred in finding the 1981 notice of sale at public auction, which did not contain a legal description of the property, violated I.C. 6–1.1–24–2.

### IV. *Notice of Sale to Delinquent Owners*

The trial court's Conclusion of Law Number 1 was:

"The Plaintiff has failed to prove that the contents of the 1981 notice of sale sent to the Defendants Kirk complied with I.C. 6–1.1–24–4."[3]

Sec. 4. (a) In addition to the notice required by section 3 of this chapter, the county auditor shall send a notice of the sale by certified mail to the owner or owners of the real property at their last known address. The county auditor shall prepare the notice in the form prescribed by the state board of accounts, and he shall mail the notice at least twenty-one (21) days before the day of sale.

Ransburg argues that this conclusion is wrong because the Kirks had the burden to show this fact and presented no evidence that the 1981 Notice of Tax Sale did not comply with I.C. 6-1.1-24-4. In addition, Ransburg notes that the parties stipulated that all requirements for tax sale were complied with, except for certain specific enumerated items, the legal effect of which the parties reserved the right to dispute. The contents of the 1981 Notice of Tax Sale sent to the Kirks was not one of the enumerated and disputed items. Ransburg argues that a stipulation of this nature is binding upon the trial court and this court on appeal and relies upon *Morgan County Rural Electric Membership Corp. v. Indianapolis Power & Light Co.* (1973), 260 Ind. 164, 302 N.E.2d 776.

■ In *Morgan County,* IPALCO, a municipally franchised electric utility serving Mooresville, sought to condemn property of REMC, another utility which served the outlying community of that area. The town of Mooresville had recently annexed a noncontiguous parcel of land which was the site of Kendrick Memorial Hospital. The hospital had previously received electric utility service from REMC. IND.CODE 8-1-13-19 (Burns 1972 Cum.Supp.) provided for condemnation by the municipally franchised utility of territory served by another utility when the municipality annexes the land. Although the parties stipulated that the annexing ordinance was "duly passed and adopted", REMC argued on appeal that the annexing ordinance was invalid. The supreme court addressed the effect of the parties stipulations:

"The REMC further contends that the annexed territory is not occupied by a municipally owned or regulated hospital and that, therefore, the annexing ordinance is invalid. With respect to this contention, there is absolutely no evidence in the record to support a finding that the hospital is privately owned. Moreover, REMC has stipulated that the annexing ordinance was 'duly passed and adopted.' As we have previously stated, such stipulation is conclusive upon the

parties and the court. *Board of Trustees v. State ex rel. Russell* (1966), 247 Ind. 570, 219 N.E.2d 886. Therefore, REMC's attack upon the annexation procedure must likewise fail. *Johnson v. City of Indianapolis* (1910), 174 Ind. 691, 93 N.E. 17."

*Morgan County, supra,* 302 N.E.2d at 779. We find *Morgan County* controls on this issue.

The parties stipulated:

"The Plaintiff and the Defendants Kirk are in agreement that, with the exception of those items listed below, all statutory requirements in respect of the tax sale and conveyance to E.M. Ransburg were complied with."

Neither party reserved any issue with respect to the 1981 Notice of Sale sent to the Kirks pursuant to I.C. 6-1.1-24-4. Even if the Kirks had reserved the right to dispute the contents of the Notice, they offered no evidence whatsoever that the notice did not comply with the statute. The trial court erred in concluding that Ransburg failed to prove the contents of the 1981 notice of sale complied with I.C. 6-1.1-24-4.

V. *Tax Sales in "Two Consecutive Years"*

Ransburg argues the trial court erred in concluding I.C. 6-1.1-24-6 requires property to be offered for sale in two consecutive *calendar* years and urges that two consecutive years *in which tax sales are held* is what was intended by the legislature. Kirk responds that the statutory language, "two (2) consecutive years" means two consecutive calendar years. Neither party cites any case law directly supporting its position.

■ Again, in construing statutes, our foremost concern is to determine and give effect to the true intent of the legislature. *B & M Coal Corp. v. United Mine Workers, supra; Holland, supra,* 500 N.E.2d at 1236; *Frame v. South Bend Community School Corp.* (1985), Ind.App., 480 N.E.2d 261. Where the meaning of the language of the statute is ambiguous or where more

(b) On or before the day of sale, the county auditor shall certify, on the tax sale record required by IC 1971, 6-1.1-25-8, that notice

was given in the manner prescribed in this section."

than one construction of that language is possible, we will construe the statute to determine the apparent legislative intent. *Holland, supra,* 500 N.E.2d at 1236; *Johnson v. LaPorte Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 350. We find the language at issue here—"when real property is offered for sale under this chapter for *two (2) consecutive years"*—does not specify whether the two consecutive years must be calendar years or years in which a tax sale is actually held by the county, and therefore this language is ambiguous and requires construction.

In construing statutes, the court may not view specific sections in isolation, but must ascertain the section's effect and application by viewing it in context with the entire act. *Holland, supra,* 500 N.E.2d at 1236; *Board of School Trustees of South Vermillion School Corp. v. Benetti* (1986), Ind.App., 492 N.E.2d 1098. Legislative intent as ascertained from an act as a whole prevails over the strict literal meaning of any word or term used therein. *Holland, supra; Benetti, supra.* Further, when the court is called upon to construe words in a single section of a statute, it must do so with due regard for all other sections of the act in order that the spirit and purpose of the statute be carried out. *Holland, supra; Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215.

The purpose of the tax sale statute is obvious—to collect delinquent property taxes. The statute sets out the procedures to accomplish that purpose while providing for repeated notice to the delinquent property owner so he may redeem the property and avoid losing it for non-payment of taxes.

We find the requirement for two consecutive years of sale before the property escheats to the county was not intended for the protection of the delinquent property owner, who is adequately protected by other sections of the statute,[4] but rather was intended by the legislature to promote the collection of property taxes by balancing the potential benefits and detriments of a county tax sale versus writing the delinquent taxes off as bad debt. In a tax sale, the property cannot be sold for less than the accrued unpaid taxes. I.C. 6–1.1–24–5. When the property does not bring the minimum bid in the tax sale, it escheats to the county to get whatever it can out of the property at auction and the delinquent taxes are effectively written off as bad debt. I.C. 6–1.1–24–6. Before writing the taxes off as bad debt, every effort should be made to sell the property at tax sale and this suggests the more times it is offered for sale, the more likely it will sell. The countervailing consideration is that as time passes, the delinquent taxes mount, thereby raising the minimum bid required in each successive tax sale and making the property even harder to sell. We conclude the requirement that property be offered for sale in "two (2) consecutive years", I.C. 6–1.1–24–6, before the property passes to the county and the accrued taxes are written off, was intended by the legislature to balance these competing considerations. The legislature wanted the property to be offered in more than one tax sale to enhance the probability of collection of delinquent taxes, but limited the sale to two consecutive years to prevent the continued mounting of a bad debt.

**4.** The protection of the delinquent property owner is accomplished in several ways. First, he must be at least 15 months behind in taxes. I.C. § 6–1.1–24–1. Second, he must be given notice that his property is being offered for sale for non-payment of taxes. Third, he is given the opportunity, for at least one year after his property is sold, to redeem it. I.C. §§ 6–1.1–25–1, –2, –4. Finally, before the property is actually deeded to the tax sale purchaser, the delinquent owner must be given advance notice and a final opportunity to redeem. I.C. § 6–1.1–25–6.

Here, there is no dispute that the Kirks received all of these protections. They were at least 15 months delinquent on their taxes. They received notice of the tax sale in 1979. They did not pay their taxes. They received a *one-year reprieve* because there was no tax sale in 1980. They received notice of the tax sale in 1981. The Kirks still did not pay their taxes. They had until December of 1982 to redeem their property. They did not redeem. The Kirks received advance notice that the property was going to be deeded over to the county. They still did not pay their taxes or redeem their property. All of these facts are conclusively established by the parties' stipulation that all statutory requirements in respect of the tax sale were complied with.

IND.CODE § 6–1.1–24–1 anticipates that a delinquent tax list will be prepared "each year." IND.CODE § 6–1.1–24–2 anticipates that each year in addition to the delinquent tax list, the auditor will prepare a notice of auction sale. While the legislature may have contemplated that one tax sale would be held each year, it is also apparent that the legislature did not anticipate the prospect that it would be impossible to hold a tax sale in a particular year.[5] We find the statute should be reasonably construed to accomplish its intended purpose under unanticipated circumstances. In this case, that means that the intent of offering the property in at least two tax sales in order to enhance the prospect of collecting delinquent taxes, but not more than two tax sales in order to minimize the build-up of unpaid taxes which may have to be written off, must control over the strict literal meaning of the words "consecutive years".

To construe the words "two (2) consecutive years" literally as "two consecutive calendar years" would do violence to the legislative intent and purpose. Such a construction would require that although a property has already been offered in one tax sale and the delinquent owners have not brought the taxes current, the county must begin anew and offer the property for sale in two additional consecutive calendar year tax sales. This result does not improve the probability that a property will be purchased at a tax sale and it actually diminishes the probability for collecting delinquent taxes. Here, if the county is required to start over in 1981 and offer the property in two more tax sales in 1981 and 1982, the effect is to add yet another year's delinquent taxes to the minimum bid and increase the bad debt which must be written off if the property does not sell. This is the opposite of what the legislature intended.

We conclude, therefore, that the words "two (2) consecutive years" means "two consecutive years in which a tax sale is held by the county", and that the two consecutive tax sales in 1979 and 1981 in Marion County were sufficient to comply with I.C. 6–1.1–24–6.

### CONCLUSION

The trial court erred in concluding each of the five above alleged defects in the tax sale proceeding rendered the tax deed Ransburg purchased from the county invalid. The Kirks rested upon their pleadings and stipulations at trial and have failed to rebutt the presumption that the certificate of sale Ransburg received from the county was presumptively valid. Since there are no factual disputes, there is no need for retrial. We therefore reverse the judgment of the trial court and remand with instructions to enter judgment in favor of Ransburg.

CONOVER, P.J., and HOFFMAN, J., concur.

---

5. Although it is not clearly presented in the appellate briefs, motion to correct errors, or the record, there is an allusion to the fact that Marion County reassessed property and resulting objections and hearings on property owner's objections made it physically impossible for the county to hold a tax sale in 1980. If we upheld the trial court's ruling and voided the sale, our decision would have the effect of voiding all 1981 tax sales in Marion County—a result which could be both catastrophic and absurd. The record and appellate briefs present no statistics or numbers with respect to yearly sales or sales in 1981, but Marion County, which includes Indianapolis, has the largest county population in the state.