REEDER ASSOCIATES II,
Appellant–Plaintiff,

v.

CHICAGO BELLE, LTD., an Illinois Corporation; and Cerestar USA, Inc., formerly American Maize Products Co., formerly Western Glucose Co.; Hammond Bridge Roadworks, LLC., an Indiana Limited Liability Company; County of Lake, State of Indiana, Appellees–Defendants.

No. 45A03–0204–CV–113.

Court of Appeals of Indiana.

Nov. 19, 2002.

Kenneth D. Reed, Abrahamson & Reed, Hammond, IN, Attorney for Appellant.

Andrew V. Giorgi, Crown Point, IN, Ronald A. Damashek, Stahl, Cowen, Crowley, LLC, Chicago, IL, Attorneys for Chicago Belle, Ltd.

## OPINION

MATTINGLY–MAY, Judge.

In this interlocutory appeal,[1] Reeder Associates II ("Reeder") appeals the trial court's decision quieting title to a parcel of real estate ("the property") located in Lake County in favor of Chicago Belle, Ltd., an Illinois corporation ("Chicago Belle").[2] Reeder raises four issues on appeal, which we consolidate and restate as:

---

1. Ind. Appellate Rule 14(A)(4) provides that interlocutory appeals "[f]or the sale or delivery of the possession of real property" are brought as a matter of right.

2. Reeder also named a number of other parties as defendants in this case. Reeder states the other defendants in this suit are so designated only because they "have or claim an interest in the subject real estate, and, by statute must be made parties to answer to their interests, if any, even though said interest may not be extinguished or adversely affected, as a matter of law, in a proceeding of this nature." (Br. of Appellant at 3) (footnotes omitted). The other defendants are not participating in this appeal.

1. whether the notices of the tax sale proceedings sent to Chicago Belle were adequate; and

2. whether the trial court erred in setting a hearing concerning Chicago Belle's request for attorney fees.

We affirm.

## FACTS AND PROCEDURAL HISTORY[3]

On February 13, 1999, due to Chicago Belle's nonpayment of property taxes, the Lake County Commissioners obtained a tax deed for the property.[4] On February 17, 1999, the Commissioners transferred the property to Reeder for $8,500.00 by way of a Commissioner's quit-claim deed.

Previously, the notice of the tax sale, notice of the right of redemption, and notice of the petition of tax deed were sent by the Lake County Auditor (the "county auditor") via certified mail to:

CHICAGO BELLE, LTD
3218 SKOKIE VALLEY ROAD
HIGHLAND PARK, IL 60035–1730

(App. of Appellant at 134–40.) However, these notices were all returned as undeliverable.

Chicago Belle's attorney and registered agent, Lawrence I. Serlin, maintains an office at 3218 Skokie Valley Road, Highland Park, Illinois 60035, along with several other tenants of the building located at that address. Serlin uses this address as a mailing address for recording and notice purposes for real estate documents and transactions handled on behalf of many of his corporate clients. This is accomplished by designating "c/o L. Serlin" when filing

and recording documents on behalf of those clients. The names of Serlin's clients are not posted anywhere in his office or the building where it is located.

Apparently an entity named SRI, Inc., is somehow "involved in the tax sale documentation process" in Lake County, (Br. of Appellee at 4), and had MaxiMilian Title Corporation prepare a title report concerning the property. This title report includes the following pertinent information on its cover page:

BELOW PLEASE FIND A LISTING OF RESIDENT AGENTS AND OTHERS TO CONTACT WITH REGARD TO ANY VESTED INTEREST IN THE ABOVE REFERENCED PROPERTY:

1. Chicago Belle LTD (Owner of Record)

3218 Skokie Valley Road

Highland Park, Illinois 60035–1730

(App. of Appellant at 129.) Additionally, page one of the title report provides in pertinent part:

LAST GRANTEE OF RECORD:iWarranty [sic] Deed

AXG Corporation, C/O Lawrence I. Serlin to Chicago Belle, LTD, % TO [sic] L. Serlin, dated 5/20/96 and recorded 5/29/96, in the Office of the Lake County Recorder as Document No. 1870.

(*Id.* at 130.)

The warranty deed on file with the Lake County Recorder transferring the property from AXG Corporation to Chicago Belle states "Send Tax Bills to CHICAGO BELLE, LTD. c/o Lawrence I. Serlin,

---

**3.** We heard oral argument in this case on September 26, 2002, in Evansville, Indiana at the University of Southern Indiana. We thank the faculty, staff, and students for their interest and hospitality, and we commend counsel for their capable oral advocacy.

**4.** Pursuant to Ind.Code § 6–1.1–24–6, when after two consecutive tax sales the minimum required sale price is not received, the county obtains the rights of a purchaser of the property.

3218 Skokie Valley Rd., Highland Park, Illinois 60035." (*Id.* at 174.) There is no other address listed for Chicago Belle in the deed. The county auditor's Real Estate Assessment and Transfer Record ("transfer record") listed the property as being transferred to:

Chicago Belle, LTD. % L. Serlin,
3218 Skokie Valley Rd., Highland Park, ILL. 60035

(*Id.* at 39.) Chicago Belle's articles of incorporation on file with the Illinois Secretary of State indicate that its registered office is 3218 Skokie Valley Road, Highland Park, IL 60035, and that its registered agent is Lawrence I. Serlin.

In August of 2000, Chicago Belle became aware of the tax sale proceeding and made attempts to redeem the property. On September 22, 2000, Chicago Belle filed within the tax sale proceeding a motion to vacate the issuance of the tax deed. On October 5, 2000, Reeder filed a separate action to quiet title. These actions were eventually consolidated, and Chicago Belle filed a counterclaim against Reeder seeking to quiet title in its favor and also requesting attorney fees and costs.

On August 8, 2001, Chicago Belle filed a motion for summary judgment. On March 6, 2002, the trial court entered summary judgment in favor of Chicago Belle, voiding Reeder's deed and quieting title to the property in Chicago Belle. Essentially, the trial court concluded the notices were defective because they were not addressed to Chicago Belle in care of Serlin. The trial court also set a hearing concerning Chicago Belle's request for attorney fees. Reeder now appeals.

## STANDARD OF REVIEW

On appeal from summary judgment, an appellate court faces the same issues that were before the trial court and follows the same process. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind. 2001). Summary judgment is appropriate only where the pleadings and evidence show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* at 909; Ind. Trial Rule 56(C). If, as here, there is no dispute as to the facts, this is a proper case for summary judgment, and our standard of review is *de novo*. *See Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind.2002). We view the pleadings and designated materials in the light most favorable to the nonmovant, in this case, Reeder. *Id.*

## STATUTORY SCHEME

■ If an owner of real estate fails to pay the property taxes, the property may be sold in order to satisfy the tax obligation. The tax sale process is purely a statutory creation and requires material compliance with each step of the governing statutes, Indiana Code sections 6–1.1–24–1 through –14 (sale), and 6–1.1–25–1 through –19 (redemption and tax deeds).[5] *See Maudlin v. Hall*, 700 N.E.2d 469, 471 (Ind.Ct.App.1998). While the issuance of a tax deed creates a presumption that a tax sale and all of the steps leading up to the issuance of the tax deed are proper, this presumption may be rebutted by affirmative evidence to the contrary. *Id.* Moreover, title conveyed by a tax deed may be defeated if the three notices required by Ind.Code §§ 6–1.1–24–4, 6–1.1–25–4.5 and 4.6 were not in substantial compliance with the requirements prescribed in those sections. *See id,* 700 N.E.2d at 471; Ind. Code § 6–1.1–25–16(7).

5. The statutes governing tax sales have been amended since the events in this case occurred. Accordingly, citations to these statutes, unless otherwise noted, are to the 1998 edition of the Indiana Code, which was the version in effect at that time.

The first required notice is the notice of tax sale set forth in Ind.Code § 6–1.1–24–4(a). That section provides that prior to a tax sale the county auditor must send notice of the tax sale "by certified mail to the owner or owners of the real property at their last known address." [6]

The second required notice is the notice of the right of redemption. Ind.Code § 6–1.1–25–4.5(a)(3) provides that a purchaser or assignee is entitled to a tax deed to the property at issue only if the county auditor [7]

gives notice of the sale, the date of expiration of the period of redemption, and the date on or after which a petition for the tax deed will be filed to the owner and any person with a substantial property interest of public record in the tract or real property.

Subsection (b) provides in pertinent part that this notice is to be sent by:

certified mail to the parties described in subsection (a) at their last known address. However, if the address of the owner or person with a substantial property interest of public record upon diligent inquiry cannot be located by the ... county auditor, notice may be given by publication.

Ind.Code § 6–1.1–25–4.5(b)

The third notice that must be given is the notice of the petition for tax deed.

Ind.Code § 6–1.1–25–4.6(a) provides that if the property is not redeemed from the tax sale, notice of the petitioning of the court to issue a tax deed must be given as follows:

Notice of the filing of this petition and the date on or after which the petitioner intends to make application for an order on the petition shall be given to the owner and any person with a substantial interest of public record in the tract or real property in the same manner as provided in section 4.5 of this chapter, except that only one (1) publication is required.

## DISCUSSION AND DECISION

### 1. *Adequacy of Notice*

Reeder argues that in Lake County the county auditor's transfer record is not the exclusive record for determining an owner's last known address, and that a review of other public records reveals the notices sent by the county auditor substantially complied with the notice requirements. Chicago Belle responds that notices regarding tax sale proceedings must be sent to the property owner at its last known address as indicated in the county auditor's records.

The basis for Reeder's appeal centers on the county auditor's apparent reliance

---

**6.** Ind.Code § 6–1.1–24–4(a) has been subsequently amended effective July 1, 2001, to provide that notice is to be sent to "the last address of the owner for the property as indicated in the records of the county auditor." The new version of the statute also provides in pertinent part that: "[t]he owner of the real property shall notify the county auditor of the owner's correct address. The notice required under this section is considered sufficient if the notice is mailed to the address required by this section." *Id.*

**7.** Ind.Code § 6–1.1–25–4.5(a)(3) provides that this notice is given by:
(A) the purchaser or assignee; or
(B) in a county having a consolidated city, a county having a population of more than two hundred thousand (200,000) but less than four hundred thousand (400,000), or a county where the county auditor and county treasurer have an agreement under section 4.7 of this chapter, the county auditor.
The parties agree that in Lake County the county auditor instead of the tax sale purchaser gives this notice.

upon title reports to ascertain where to send notices. Reeder argues that Ind. Code §§ 6–1.1–24–2(a)(11),[8] 6–1.1–24–5(e)(6), 6–1.1–25–2(e)(3), 6–1.1–25–4.5, and 6–1.1–25–4.7 provide the statutory authority for the county auditor to rely on title reports in order to determine the correct notice information. However, Reeder fails to offer any explanation whatsoever as to how these statutes operate either individually or collectively to allow a county auditor to rely on title reports in lieu of its own records. We disagree that the statutes support Reeder's contention.[9]

■ As stated in our supreme court's decision in *Tax Certificate Investments, Inc. v. Smethers*, 714 N.E.2d 131, 133–34 (Ind.1999):

> The U.S. Supreme Court held in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), that a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" prior to taking steps that will affect a protected interest in life, liberty, or property. Notice is constitutionally adequate when "the practicalities and

peculiarities of the case ... are reasonably met." *Id.* at 314–15, 70 S.Ct. 652, 94 L.Ed. 865.

In *McBain v. Hamilton County*, 744 N.E.2d 984, 988 (Ind.Ct.App.2001), *reh'g denied*, the Hamilton County Auditor sent the McBains a notice of tax sale to the McBains' Hamilton County address. However, the McBains did not receive the notice because they had moved to Tennessee. The notice was returned to the auditor by the post office with a notation indicating that the order to forward the McBains' mail to their new address at 7612 Emerald Greens Drive in Cordova, Tennessee had expired. The auditor, however, did not send the notice to the Tennessee address and subsequently sold the McBains' property at a tax sale. Relying on our supreme court's decision in *Elizondo v. Read*, 588 N.E.2d 501 (Ind.1992), we held in *McBain* that the county auditor was required to send the notice to the Tennessee address. 744 N.E.2d at 989.

*McBain's* discussion of our supreme court's decision in *Elizondo*, which addressed the requirements of due process in the context of tax sale notices, is as follows:

> (b) If a county auditor and county treasurer enter into an agreement under this section, notice shall be given under IC 6–1.1–24–2(a)(10).

However, Ind.Code §§ 6–1.1–25–4.5 and 4.6, which are the statutes regarding the notices of redemption and petition of tax deed, do not even mention title searches. Ind.Code § 6–1.1–24–2 is a public notice of sale statute for the benefit of the buyers and does not address the notice that is to be given to owners. *See Ransburg v. Kirk*, 509 N.E.2d 867, 874 (Ind. Ct.App.1987). Ind.Code §§ 6–1.1–24–5(e)(6) and 6–1.1–25–2(e)(3) generally provide for the recovery of the costs of title searches. These statutes do not support Reeder's contention that a county auditor can rely on a title search in lieu of its own records.

---

**8.** Reeder cites to a nonexistent Ind.Code § 6–1.1–24–1(a)(11). We assume Reeder is actually referring to Ind.Code § 6–1.1–24–2(a)(11).

**9.** Although some of the statutes cited by Reeder refer to title searches, those statutes do not appear to support Reeder's contention that a county auditor can rely on a title search in lieu of its own records. For example, Ind. Code § 6–1.1–25–4.7 provides:

> (a) A county auditor and county treasurer may enter into a mutual agreement for the county auditor to perform the following duties instead of the purchaser:
> (1) Notification and title search under section 4.5 of this chapter.
> (2) Notification and petition to the court for the tax deed under section 4.6 of this chapter.

In *Elizondo,* the county Auditor mailed notices regarding tax sale proceedings to a tax-delinquent property owner at the owner's most recent address on file in the auditor's office. *Id.* at 502. The notices, however, were returned to the Auditor's office by the post office marked "Unclaimed" or "Undeliverable as addressed. No forwarding order on file." *Id.* A more recent address for the property owner apparently could have been discovered by searching records in the Auditor's office, and by thumbing through the local phone book, and the property owner argued that the Auditor was affirmatively obligated to find his address from one of these sources and mail notice to him at that address. *Id.* at 504. The supreme court disagreed, explaining that an Auditor has no obligation to search through telephone directories or other documents or sources of information "not routinely maintained by and within the auditor's office" to discover the property owner's current address. *Id.* According to the supreme court,

> All that is required is that the auditor send notice to the owner's last known address, that is, the last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office.

*Id.* As for the possibility that the Auditor might have had a more recent address for the property owner in the Auditor's own records, the court noted that an Auditor is deemed to be aware of the contents of records in its office, and stated:

> It is reasonable to require the auditor to search the records of his own office for other possible addresses upon the receipt of an undelivered notice.
>
> . . .

Certainly, the auditor must ascertain from the records which he keeps and maintains any alternate addresses for the owner of the specific piece of property at issue.

*Id.* at 505. The court explained, however, that in fulfilling this obligation, an auditor would be deemed to be aware of an alternate address for a property owner found in the Auditor's records only to the extent that the source of the information affirmatively links the alternate address as that of the owner of the specific property in question. *Id.* at 504. In *Elizondo,* that meant that while the Auditor apparently had alternate listings for property owner Urbano Elizondo, the Auditor had no obligation to forward notice to those alternate listings because there was nothing save Elizondo's name to directly link the "Urbano Elizondo" identified in those listings with the "Urbano Elizondo" who owned the parcel of property in question. *Id.*

*McBain,* 744 N.E.2d at 988–89.

*McBain,* applying the principles of *Elizondo,* held that the county auditor could not disregard the Tennessee address located on the returned envelope because the county auditor had at that time what became the McBains' last known address. 744 N.E.2d at 989. The Tennessee address by virtue of its location on the returned envelope containing the notice of tax sale was unquestionably linked to the McBains and the property in question. *Id.*

▮ In our case, the address maintained by the county auditor in its transfer record for Chicago Belle concerning the property in question included Serlin's name. The county auditor is deemed to be aware of the contents of the records maintained in its office. *See Elizondo,* 588 N.E.2d at 504; *McBain,* 744 N.E.2d at 989. Therefore, the county auditor was required to include Serlin's name in ad-

dressing the notices. However, instead of relying on its own records, the county auditor apparently relied on a title report in ascertaining where to send the tax notices. As a result, Chicago Belle did not receive the notices. Due process requires the county auditor to search the records that it maintains in its office. *See Elizondo*, 588 N.E.2d at 505; *McBain*, 744 N.E.2d at 989. Although a county auditor may go beyond the minimum requirements of due process and engage in a search of outside records, it may not do so in lieu of a search of its own records.

Reeder argues that other records, primarily Chicago Belle's Illinois corporate records, indicate that the notices sent by the county auditor without the inclusion of Serlin's name substantially complied with the notice requirements. However, Chicago Belle's address as it is contained in these other records is irrelevant. Even if records other than those maintained by the county auditor indicate an alternative address for Chicago Belle, due process still requires the county auditor to send notices to the address that it maintains in its own records.[10]

## 2. *Attorney Fees*

■ Reeder argues that Chicago Belle is not entitled to attorney fees and costs.[11] However, Chicago Belle has not been

granted any attorney fees or costs. The issue of attorney fees and costs is still pending in the trial court. The trial court, thus far, has only set a hearing concerning this issue. This issue is not ripe for appellate review. *See Ruman v. Eskew*, 168 Ind.App. 428, 343 N.E.2d 806, 809–10 (1976). The trial court did not err by setting a hearing concerning this issue.

Affirmed.

SHARPNACK and BARNES, JJ., concur.

---

10. Additionally, Reeder argues that tax notices are not service of process that would require them to be served on Serlin as Chicago Belle's registered agent. Regardless of whether tax sale notices are service of process, the county auditor was required to send the notices to the address it maintained for Chicago Belle in its own records.

11. Ind.Code § 6–1.1–25–13 provides:
(a) When the grantee of an ineffectual tax deed, or his successors or assigns, receives payment for the amount which he is entitled to receive under section 12(c) of this chapter, he shall execute, acknowledge, and deliver a deed releasing the lien on the real

property which he has acquired under section 12(a) of this chapter. He shall execute and deliver the deed to the person who makes the payment.
(b) If the grantee, or his successors or assigns, fails to execute, acknowledge, or deliver a deed as required by this section, the person who makes the payment may initiate an action to quiet title to the real property. When the payor initiates such an action, the grantee, or the grantee's successors or assigns, is liable for the court cost and the payor's reasonable attorney fees which result from the action.