Vaidik, Chief Judge,
concurring in result.
I join Judge Bailey in voting to affirm the trial court’s decision, but I respectfully disagree with his interpretation of Indiana Code sections 6-1.1-25-4.5 and - 4.6.- ,
Those statutes require a tax-sale purchaser seeking a tax deed to provide notice, to “the owner of record at the time of the sale and any person with a substantial property interest of public record in the tract or item of real property.” Judge Bailey reads this language to require notice to any person who has recorded an interest in the subject property, even if the interest is recorded “outside the chain of title” and the only way for the tax-sale purchaser 'to discover the interest at the recorder’s office is to “search every document” in the office. Op. at 1240 (emphasis added). He concludes that this is & “safeguard” for existing property owners,, intentionally created by the General Assembly. Id. I, cannot agree.
“The purpose of the tax sale statute is obvious—to collect delinquent property taxes.” Ransburg v. Kirk, 509 N.E.2d 867, 876 (Ind. Ct. App. 1987), reh’g denied. But if the only way for tax-sale purchasers to achieve- certainty and predictability is to carefully review every single document in the relevant recorder’s office, tax-sale purchases will become much more risky and expensive, and the collection of delinquent taxes will become much more difficult. Therefore, I simply cannot conclude that the legislature, which is well aware of the volume of documents on file at the record *1242 er’s offices in this state, intended to establish such a requirement.
Instead, I interpret the statutes, as does Judge Robb, to mean that the holder of a recorded interest is entitled to notice only if the tax-sale purchaser knows of the recording or would become aware of it in the exercise of reasonable diligence. Reasonable diligence includes performing all available index and electronic searches for recorded documents (using property-specific and party-specific search criteria) and conducting an in-person visit to the property. If the visit to the property provides the tax-sale purchaser with new information (such as names of potential interest holders), additional searching for recorded documents may be warranted.
Here, there is no evidence that the Jenners had independent, existing knowledge of the recording of Crown Castle’s interests. Moreover, Crown Castle concedes that the recordings were not discoverable—at least at the times relevant to this case—using the available search options through the Monroe County Recorder’s Office. The attorney for the title company hired by the Jenners signed an affidavit indicating that a name search was the company’s only option, and the only name available to the title company (the only relevant name in the “chain of title”) was Bloomington Cellular. Of course, advances in recording, record-keeping, and search technology have made it possible in many counties to find recorded interests in a particular, tract— even those recorded “outside” the traditional chain of title—simply by using the legal description, the address, or the Tax/Parcel ID. Indeed, a search today for the Property’s Tax/Parcel ID on the Dox-pop database for Monroe County quickly leads one to Crown Castle’s recorded interest. However, because the title company was unable to find Crown Castle’s recordings, and because Crown Castle does not contend that the title company should have been able to do so, we must assume that, back in 2014, the only way to search for the recordings was a traditional chain-of-title search by name.
That leaves an in-person visit to the Property, which is where I part ways with both of my colleagues. On this point, the trial court ruled as follows:
In the present case, a physical view of the Vernal Pike Property would have disclosed Crown Castle’s interests in the property. Consequently, knowledge of the cell tower and signage was imputed to [the Jenners] at the time of the tax sale. The cell tower and signage were sufficient to disclose Crown Castle had a substantial property interest in. the property. And, with that knowledge, the Jenners could have searched the Monroe County Recorder’s public records available for public inspection through the Internet on DoxPop where they are maintained for the Monroe County Recorder. Indeed, a simple name search for Crown Castle would have revealed Crown Castle’s Lease and License.
Appellants’s App. Vol. II p. 28 (emphasis added). In short, the trial court found that a visit to the Property would have revealed Crown Castle’s name and that a follow-up recorder’s office search for Crown Castle’s name would have revealed its recordings. I defer to the trial court’s factual findings in this regard, and I vote to affirm its decision on this ground.[2]

. In disagreeing with the trial court on this issue, Judge Bailey reads the trial court’s order as concluding that Crown Castle would have been entitled to notice simply by virtue of its possession of the property, as evidenced by the sign, even if its interest had been unrecorded. See op. at 1240 ("[T]here is no notice requirement to those who possess the *1243 property without a recorded interest. The tax-sale statutes do not require notice to parties in physical possession unless those parties hold a recorded interest in the land.”) & 1241 ("[T]he [tax-sale] statute expressly excludes from the tax-sale purchaser’s duties the necessity of providing notice to parties in possession with unrecorded interests[.]”). That is not how I read the trial court’s order. As I see things, the trial court ruled that Crown Castle was entitled to notice precisely because its interest was recorded—a recording the Jen-ners would have discovered if they had looked at the sign and then gone to the recorder’s office and conducted a search for the name on the sign.