FILED

Jul 30 2019, 5:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Greg A. Bouwer
Jeff Carroll
Koransky Bouwer & Poracky, P.C.
Dyer, Indiana

ATTORNEY FOR APPELLEE
XL INVESTMENT PROPERTIES,
LLC

Matthew J. Hagenow
Newby, Lewis, Kaminski & Jones,
LLP
LaPorte, Indiana

ATTORNEY FOR APPELLEE
LAPORTE COUNTY AUDITOR

J. Alex Bruggenschmidt
Buchanan & Bruggenschmidt,
P.C.
Zionsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Indiana Land Trust Company,
f/k/a Lake County Trust
Company TR #4340,

*Appellant-Movant,*

v.

XL Investment Properties, LLC,
and LaPorte County Auditor,

*Appellees-Respondents*

July 30, 2019

Court of Appeals Case No.
18A-MI-2150

Appeal from the LaPorte Superior
Court

The Honorable Richard R.
Stalbrink, Jr., Judge

Trial Court Cause No.
46D02-1509-MI-1642

**Baker, Judge.**

[1] Indiana Land Trust Company, f/k/a Lake County Trust Company TR #4340 (Trust 4340), appeals the judgment of the trial court denying its motion to set aside a tax deed and quiet title judgment issued to XL Investment Properties, LLC (XL Investment). Trust 4340 argues that the trial court erroneously determined that the motion to set aside was untimely filed and the tax sale notice process employed by the LaPorte County Auditor (the Auditor) was statutorily and constitutionally insufficient. Finding that the motion to set aside was not untimely and that the notice process was constitutionally insufficient, we reverse and remand for further proceedings.

# Facts[1]

[2] Peter Dellaportas is a decades-long real estate developer who owns many investment properties. At some point in the past, Dellaportas purchased a 140-acre property, which used to be a municipal airport, in Michigan City. The property has since been subdivided into multiple parcels, some of which have been developed for commercial use.

[3] Dellaportas's company, located in Chicago, is called Midwest Investment. In June 1993, Dellaportas put one of the undeveloped parcels, totaling approximately thirty acres (the Property) into a trust, Trust 4340, with either

---

[1] We held oral argument in Indianapolis on July 2, 2019.

himself or Midwest Investment as the beneficiary. Lake County Trust Company (the Trust Company) was the entity that helped him process and finalize the trust.

[4] The deed directed that property tax bills for the Property should be sent to Midwest Investment at 415 North LaSalle Street, Suite 700, in Chicago. In 1994, Midwest Investment relocated to Suite 200 in the same building and remained there for approximately ten[2] years. In 2014, Midwest Investment moved to 432 North Clark Street, Suite 304, in Chicago. Midwest Investment did not update the Auditor with its changes of address.

[5] Midwest Investment paid the property taxes on the Property from 1993 through 2008 but failed to pay any property taxes from 2009 through 2015. In 2015, LaPorte County (the County) determined that the Property's outstanding tax liability totaled $230,017.26.

[6] The County held a tax sale in 2015 (the Tax Sale); the certified Tax Sale list included the Property. The County engaged SRI, Inc. (SRI), a local government contractor, to assist with various aspects of the tax sale process, including the mailing of thousands of tax notices. The Work Plan Agreement entered into between the County and SRI stated that the parties (including SRI, the Auditor, and the Treasurer) would "individually or collectively perform or

---

[2] Dellaportas testified that Midwest Investment remained in Suite 200 for ten years, but the next change of address he mentioned occurred in 2014. Tr. Vol. II p. 25, 27.

cause to be performed by employees of their organization the actions defined herein which are required to execute the County Tax Sale in compliance with Ind. Code 6-1.1-24 and Ind. Code 6-1.1-25." Tr. Ex. 21. The Work Plan Agreement also stated that "the Auditor agrees to search its internal records for a better address for the owner(s) of properties for which the certified mail notices are returned and provide the results of said searches to SRI . . . ." *Id.*

[7] In 2015, the General Assembly amended Indiana Code section 6-1.1-24-4. Following that amendment, the Auditor believed it no longer had an obligation to search for a better address if certified mail notices were returned as undeliverable.

[8] On July 31, 2015, SRI prepared the notice of the tax sale of the Property and sent it by certified mail (the Certified Mail Notice) to Trust 4340 at Suite 700 on North LaSalle Drive. The Certified Mail Notice did not contain a street address or common description of the Property. The Certified Mail Notice was returned, stamped "Return to Sender, Not Deliverable as Addressed, Unable to Forward," and bore a handwritten note stating "refused." Tr. Ex. 24. The notice was also mailed to the same address on the same date by regular, first-class mail (the First Class Notice). The First Class Notice was not returned.

[9] SRI generated a "returned mail to search" list for all entities that were sent notices of the Tax Sale; the list included Trust 4340. In August 2015, SRI performed an additional search for addresses of those entities, but evidently was unable to find the current address for Trust 4340 and/or Midwest Investment.

[10] On August 7, 2015, the address for tax notices for Trust 4340 and the adjacent parcel was changed in the LaPorte County system used by the Auditor and assessor. Beginning on that date, the system listed the correct, current address on North Clark Street.

[11] The Auditor did not undertake any effort to find current addresses for property owners whose certified mail was returned as undeliverable. Although SRI posted to its website if first class or certified mail was returned, no one from the Auditor's office ever checked that website to determine if mail had been returned. There was never a point in the process when the Auditor looked for returned mail or took any action related to it. Indeed, employees of the Auditor readily admitted they took no action:

- "Q: Did you search your internal records for this parcel, to your knowledge? A: I just answered that. We did not because the first-class mail was not returned. Shall I say it slower?" Tr. Vol. II p. 71.

- "Q: You didn't have to do anything[?] A: No. Q: So you didn't make any type of determination on whether or not to search for another address? A: No, we did not. We didn't search for anything. Q: So you could [not] have cared less if the notices were returned[?] A: That's right." Appellant's App. Vol. III p. 59.

The Auditor published notice of the Tax Sale in the local newspaper three times before the Tax Sale.

[12] Dellaportas and Midwest Investment remained unaware of the Tax Sale. In October 2015, the Tax Sale took place, but the Property did not sell. Therefore, the County placed it for sale at a Live Certificate Sale in February 2016. The

County published notice of the Live Certificate Sale. XL Investment purchased the Property for $155,000. XL Investment filed a petition for a tax deed for the Property. The trial court entered an order issuing the deed on August 30, 2016. The deed was signed on September 30 and recorded on October 4, 2016. At some point, XL Investment filed a quiet title action, which finally resulted in notice to Trust 4340 on December 9, 2016.

[13] On March 9, 2017, Trust 4340 moved to set aside the judgment and tax deed. A bench trial took place on April 13, 2018, and on August 9, 2018, the trial court denied Trust 4340's motion. In pertinent part, the trial court found as follows:

44. [The Notice] was sent by first class mail and certified mail to the owner of record at the last address of record. The first class mailing was not returned, leaving the Auditor under no obligation to take additional steps to notify the property owner.

\*\*\*

46. Per statute, the owner of the Property was to notify the County of a change in address and did not.

\*\*\*

48. The Court finds that although the Tax Sale notice did not include the property address or other description of the property, the Auditor and SRI still substantially complied with Indiana Code § 6-1.1-24-4 by providing the pin number and legal description and could not provide any

address or other description because the property was vacant.

***

77. Due process does not require that a property owner receive actual notice before the government may take his property. Rather, we have stated that due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220 (2006).

78. When mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so. *Id.*

79. . . . In the present case, the Auditor sent two mailings, one via first class mail and one via certified mail. Although the certified mail was returned, the first class mailing was not returned.

80. The Court in *Jones* held that when a mailing is returned unclaimed, additional steps must be taken to provide notice. *Id.* The County in the present case took that additional step when they sent two mailings through two different methods. They also went a step further and published notice of the pending Tax Sale three times in the local paper.

***

84.    Therefore, the County's efforts to notice the Trust prior to the tax sale were reasonably calculated to appraise [sic] Trust 4340 of the tax sale proceedings against the property and it was reasonably certain that the first class mailing informed those affected because it was never returned.

\*\*\*

90.    The Court finds that the Trust did not file its petition for relief within a reasonable amount of time for the following reasons:

    1.    The Trust did not pay real estate taxes on the Property for eight (8) years.

    2.    The Trust acquired the property in 1993. Despite multiple moves over several years, the Auditor was never provided with an updated address by the Trust.

\*\*\*

    4.    Peter Dellaportas testified to be an experienced real estate developer who knew or should have known that real estate taxes are due each year and the subsequent consequences for not paying them.

Appealed Order p. 8-16. Trust 4340 now appeals.

## Discussion and Decision

[14]    Trust 4340 raises multiple arguments on appeal, which we reframe and restate as follows: (1) the trial court erroneously determined that Trust 4340's motion

to set aside the tax deed and judgment was untimely filed; and (2) the trial court erroneously determined that the notice was sufficient under statutory and constitutional law and under the Work Plan Agreement.

# I. Timeliness

As noted above, the trial court found that Trust 4340's petition to set aside was untimely filed. It based this conclusion on several factors: (1) Trust 4340 did not pay real estate taxes on the Property for eight years; (2) Trust 4340 did not update the Auditor on its address changes; (3) XL Investment took the extra step of publishing notice of the tax proceedings in a local newspaper; and (3) Dellaportas is an experienced real estate developer who knew or should have known about the consequences of failing to pay property taxes on time. Trust 4340 maintains that these are improper reasons to find that its petition was untimely filed.

As a general rule, a property owner may not contest a tax deed if more than sixty days have passed since the trial court entered its order issuing the deed. Ind. Code § 6-1.1-25-4.6(l). There is a due process exception extending this period to a "reasonable time," which will vary with the circumstances of each case. *Edwards v. Neace*, 898 N.E.2d 343, 347-48 (Ind. Ct. App. 2008) (noting that delays in excess of one year can be reasonable depending on the circumstances).

Here, XL Investment served Trust 4340 with the summons and complaint in a quiet title action on December 9, 2016. It is undisputed that this was the first

notice of the tax proceedings that Trust 4340 actually received. It filed its motion to set aside on March 9, 2017, exactly three months later (over six months after August 30, 2016, when the trial court ordered the Auditor to issue a tax deed to XL Investment).

[18] The trial court's rationale for finding the motion untimely filed primarily focuses on the length of tax delinquency, as well as Trust 4340's actions, *before* the tax sale, rather than the period of time that elapsed after the tax deed was issued. There is no caselaw supporting this analysis. By their very nature, tax sales *always* occur after a period of tax delinquency, often a lengthy one. Therefore, if trial courts could focus on the period of delinquency as opposed to the period of time elapsed after the tax sale occurred, there would be no point in the "reasonable time" exception.

[19] We find that under the circumstances of this case, a delay of six months after the trial court ordered the Auditor to issue a tax deed—which was only three months after Trust 4340 first received notice of the proceedings—was reasonable. Therefore, the trial court erred by finding the motion to set aside untimely filed.

## II. Notice of Tax Sale

[20] Before the legislature amended Indiana Code section 6-1.1-24-4 in 2015, it was well established that due process required county auditors to search their own records. *E.g.*, *City of Elkhart v. SFS, LLC*, 968 N.E.2d 812, 817 (Ind. Ct. App. 2012) (noting that due process "requires the county auditor to search the

records that it maintains" in its office); *Hullett v. LaFevre*, 926 N.E.2d 524, 528 (Ind. Ct. App. 2010) (same); *Edwards*, 898 N.E.2d at 349 (same); *Reeder Assocs. II v. Chicago Belle, Ltd.*, 778 N.E.2d 828, 834 (Ind. Ct. App. 2002) (same).[3]  This caselaw does not condition the records search on other events, nor does it deem it a factor in a totality of the circumstances type of determination as to whether proper tax sale notice has been provided.  Instead, it is black and white:  an auditor is charged with knowledge of the contents of its records and is constitutionally obligated to search those records.

[21]  It is axiomatic that the General Assembly may not legislate away constitutional due process protections.  *See Flanner House of Indianapolis, Inc. v. Flanner House Elem. Sch., Inc.*, 88 N.E.3d 242, 252 (Ind. Ct. App. 2017) (noting that legislative actions "must not interfere with constitutional rights"); *cf. State v. Rendleman*, 603 N.E.2d 1333, 1336 (Ind. 1992) (noting that the legislature may modify or abrogate common law rights "so long as such change does not interfere with constitutional rights").  Indeed, the purpose of Indiana Code section 6-1.1-24-4 is "to codify the applicable due process protections and instruct the auditor on how to provide constitutionally sufficient notice."  *Farmer Mut. Ins. Co. v. M*

---

[3] The Auditor argues that the United States Supreme Court upended years of Indiana caselaw when it decided *Jones v. Flowers*, 547 U.S. 220, 229 (2006).  But in the years following *Jones*, Indiana courts have continued to enforce unequivocally an auditor's constitutional obligations to be aware of and search its own records.  *See City of Elkhart*, 968 N.E.2d at 817; *Hullett*, 926 N.E.2d at 528; *Edwards*, 898 N.E.2d at 349; *see also Marion Cty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 218-20 (Ind. 2012) (noting that *Jones* informed, but did not alter, the long-standing due process protections put in place by *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

*Jewell, LLC*, 992 N.E.2d 751, 759 (Ind. Ct. App. 2013).[4]  Therefore, "to interpret the statute in a manner that conflicts with or provides less protection than the Due Process Clause would frustrate its clear legislative purpose." *Id.*  In fact, in this case, the Work Plan Agreement between SRI and the Auditor required the Auditor to search its own records for a better address for the owners of the properties for which certified mail notices were returned—a provision that SRI believed was intended to ensure that the tax sale notices complied with due process.  Tr. Vol. II p. 113.

[22]  Therefore, regardless of the language of Indiana Code section 6-1.1-24-4, the Auditor is charged with knowledge of the contents of its records and is constitutionally obligated to search those records.  Here, it is undisputed that it did not do so.

[23]  The attempts the Auditor made to locate Trust 4340 were constitutionally insufficient.  First, the Auditor published notice of the sale in a local newspaper, but notice by publication is looked on with extreme disfavor in a tax sale situation.  *Jones*, 547 U.S. at 237-38 (noting that publication is adequate only where it is not reasonably possible or even practicable to give more adequate warning).  Second, the Auditor, through SRI, conducted an additional search after the certified mailing was returned as undeliverable.  But a search of other

---

[4] The Auditor directs our attention to *Badawi v. Orth* for the proposition that tax sale notices comport with due process requirements if they are sent in accordance with relevant statutes.  955 N.E.2d 849, 853-54 (Ind. Ct. App. 2011).  But *Badawi* concerns statutory due process rather than constitutional due process—a key distinction that renders *Badawi* inapposite.

records and databases does not comport with due process where the Auditor failed to search its own records first. *See Reeder Assocs. II*, 778 N.E.2d at 835 (holding that while "a county auditor may go beyond the minimum requirements of due process and engage in a search of outside records, it may not do so in lieu of a search of its own record").

[24] Third, the fact that the Auditor mailed a notice by first class mail (which was not returned) in addition to certified mail is not enough to satisfy due process given that the certified mail attempts were returned as undeliverable. Our appellate courts have distinguished between different ways in which certified mail is returned. If it is returned as "unclaimed and unable to be forwarded," the auditor satisfies due process when it also sent the notice via first class mail and took other reasonable steps to attempt to notify the property owner. *Floor Essence, LLC v. Marion Cty. Auditor*, 14 N.E.3d 883, 885 (Ind. Ct. App. 2014). If, on the other hand, it is returned and stamped "not deliverable as addressed, unable to forward," as it was in this case, then "re-mailing the notice by first class [is] unreasonable." *Marion Cty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 220 (Ind. 2012); *see also M&M Inv. Group, LLC v. Ahlemeyer Farms, Inc.*, 994 N.E.2d 1108, 1117 (Ind. 2013) (affirming *Sawmill* reasoning).

[25] It is true that here, in addition to being stamped as undeliverable and unable to forward, the first certified mail attempt was returned bearing the word "refused" in handwriting. Not only is there no indication of who wrote it or who "refused" it, the official Post Office stamp indicates that the mail was not deliverable. Given such a conflict and our preference for erring on the side of

due process protections, we believe that the official Post Office stamp and label must control. Here, the Post Office deemed the notice to be not deliverable as addressed and unable to forward; therefore, the act of sending the notice via first class mail was insufficient to comply with constitutional due process.

[26] It has long been settled in Indiana that to comply with due process in tax sale proceedings, county auditors are charged with the knowledge of their own records and are required to search those records.[5] The General Assembly does not have the authority to codify away constitutional protections. Therefore, despite the language of Indiana Code section 6-1.1-24-4, the Auditor was required to search its records for a better address for Trust 4340 after the certified mail notice was returned as not deliverable.[6] Under these circumstances, the trial court erred by denying Trust 4340's motion to set aside the tax deed and quiet title judgment. Consequently, we reverse and remand.[7]

---

[5] We note that in this day and age of digitized records, this is not a monumental task. The unchallenged testimony provides that after August 7, 2015, the Auditor would have been able to locate the correct address for Trust 4340 in its internal, searchable "Low" system. Tr. Vol. II p. 115; Tr. Ex. 8. And in any event, courts of this State have rejected an argument that such a search would be difficult or futile. *E.g.*, *Farmers Mut. Ins. Co.*, 992 N.E.2d at 756 (holding that this Court "could not agree that noncompliance . . . may be excused if it is later determined that such a search would have been fruitless").

[6] We note that the fact that Trust 4340 did not keep its changes of address updated with the Auditor is irrelevant to the Auditor's exercise of constitutional duties. *See Farmers Mut. Ins. Co.*, 992 N.E.2d at 758-59 (noting that the *Jones* Court "rejected any suggestion that a landowner's failure to comply with a statutory obligation to keep his address updated forfeited his right to constitutionally sufficient notice" and holding that "a landowner's failure to provide the auditor's office with a correct mailing address [cannot] excuse[] the auditor's failure to carry out his duties").

[7] We need not address Trust 4340's other arguments. But we note that we have significant concerns about the substantive content of the notice. Specifically, the notice provided neither a street address—which is not surprising, given that the land was undeveloped and had no address—or a common description of the

The judgment of the trial court is reversed and remanded for further proceedings.

May, J., and Tavitas, J., concur.

---

Property. We question whether this notice complied with Indiana Code section 6-1.1-24-4(b)(2), which *requires* that a tax sale notice must contain either a street address or a common description of the property.