

IN THE

# Indiana Supreme Court



FILED

Oct 27 2020, 11:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Supreme Court Case No. 20S-MI-62

## Indiana Land Trust Company, f/k/a Lake County Trust Company TR #4340,
*Appellant-Movant,*

—v—

## XL Investment Properties, LLC, and LaPorte County Auditor,
*Appellees-Respondents.*

---

Argued: June 11, 2020 | Decided: October 27, 2020

Appeal from the LaPorte Superior Court
No. 46D02-1509-MI-1642
The Honorable Richard R. Stalbrink, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 18A-MI-2150

---

**Opinion by Justice David**
Chief Justice Rush and Justices Massa, Slaughter, and Goff concur.

**David, Justice.**

Before the State sells a delinquent property, the Due Process Clause of the Fourteenth Amendment requires that the owner of the property be given adequate notice reasonably calculated to inform him or her of the impending tax sale. While actual notice is not required, the government must attempt notice in a way desirous of actually informing the property owner that a tax sale is looming. If the government becomes aware that its notice attempt was unsuccessful—such as through the return of certified mail—it must take additional reasonable steps to notify the owner of the property if practical to do so.

In this case, property taxes went unpaid on a vacant property from 2009 to 2015 resulting in over $230,000 in outstanding tax liability. The county auditor—through a third-party service—sent simultaneous notice of an impending tax sale via certified letter and first-class mail to the tax sale notice address listed on the deed for the property. The owner of the property, however, had moved from its original address several times and never updated its tax address for the property with the county auditor. The certified letter came back as undeliverable, but the first-class mail was never returned. After a skip-trace search was performed for a better address and notice was published in the local newspaper, the property eventually sold and a tax deed was issued to the purchaser. The original owner was ultimately notified of the sale when the purchaser filed a quiet title action and searched for a registered agent. The original owner then moved to set aside the tax deed due to insufficient notice.

The central question before our Court today is whether the LaPorte County Auditor gave adequate notice reasonably calculated to inform Indiana Land Trust Company of the impending tax sale of the property. As a corollary question, we also confront whether the Auditor was required under the circumstances of this case to search its own records for a better tax sale notice address when the notice sent via certified mail was returned as undeliverable. We find the Auditor provided adequate notice and was not required to search its internal records. We therefore affirm the trial court's denial of Indiana Land Trust's motion to set aside the tax deed.

## Facts and Procedural History

Peter Dellaportas is a real estate developer and the president of Midwest Investment, Inc. At some point in the early 1990's, Dellaportas purchased 140 acres of property on the former site of a municipal airport in Michigan City in LaPorte County, Indiana. Dellaportas began dividing the property and developing the parcels for various commercial tenants. Relevant to the current dispute, Lot 2 was a nearly 30-acre undeveloped plat contained within the greater development.[1]

In 1993, Dellaportas transferred the property to Indiana Land Trust #4340 (hereinafter "Trust 4340" or "the Trust"). On the deed memorializing the transaction, a written notation directed that tax bills be sent to:

> Midwest Investment, Inc.
> 415 North LaSalle Dr., Suite 700
> Chicago, Illinois 60610
> Attn: Mark Youngman, President.

App. Vol. 2 p. 8. Though Dellaportas testified that this address was accurate in 1993, Midwest Investment, Inc. moved from the tax notice address in the mid-1990s and several times after that. As of 2016, Midwest Investment moved to its presumably-still-current address at Clark Street in Chicago, Illinois.

Property taxes were paid on Lot 2 from 1993 through 2008, but no payments were made from 2009 through 2015. As of July 31, 2015, the property had accrued an outstanding tax liability of $230,017.26. An adjacent property—also placed in Trust 4340—underwent a tax sale and

---

[1] Although the tax notice address is the center of the present dispute, at all relevant times, the property address for Lot 2 was "Unit 2, Lot 2 in Michigan City Town Centre Subdivision, as per plat thereof recorded May 30, 2003 as Instrument No. 2003-14174, In Plat Book 24, page 54, In the Office of the Recorder of La Porte County, Indiana" and was more commonly referred to as, "Vacant Land, Cleveland Avenue, Michigan City, IN 46360. Parcel ID No.: 46-05-09-300-039.000-009." Ex. Vol. I p. 59. See also App. Vol. 2 p. 54; Tr. p. 95.

was ultimately redeemed by the Trust after it received notice of the sale from the purchaser's attorney.[2] Although Midwest Investment updated its tax notice address for Trust 4340 with the LaPorte County Auditor with respect to the adjacent property, the records for Lot 2 were apparently never updated within the Auditor's system.

Meanwhile, LaPorte County had entered into an agreement with SRI, Incorporated ("SRI") to complete a variety of services, including preparing lists of properties eligible for tax sales, preparing notices, publications, and postings for those lots eligible for tax sale, and conducting tax sales. As part of the arrangement, SRI agreed to mail tax sale notices via certified mail and first-class mail to the property owners. If those notices were returned or not successfully delivered, SRI was required to perform a "skip trace" search to locate a different address for the owner; the LaPorte County Auditor's office also agreed to search its own records for a better address.

On July 31, 2015, SRI generated a report that indicated Lot 2 was delinquent on its property taxes. The same day, SRI sent two identical notices of tax sale—one via certified mail and one via first-class mail—to Trust 4340 at the LaSalle Drive address. While the first-class mailing was not returned to SRI or the Auditor, the certified mail was returned with a postal service NIXIE label reading "NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD" and a handwritten notation "REFUSED" on the outside of the envelope. Ex. Vol. I p. 218. Notice was also published in a LaPorte County newspaper on three separate occasions.

SRI testified that after the certified mail was returned as undeliverable, it performed an unsuccessful skip trace search to see if it could find the owner of the property. Apart from SRI's efforts, the LaPorte County Auditor's office did not search its internal records for any additional addresses for Lot 2's owner because it believed it had no obligation to do

---

[2] We note that Mr. Dellaportas still received this notice even though it was sent to the LaSalle Drive address—albeit at a different suite number.

so after the first-class mail was not returned. Based on these actions, neither SRI nor the Auditor identified a different tax notice address for the parcel.

Lot 2 proceeded to a tax sale in October 2015 but did not sell. A certificate was issued to the county commissioners and Lot 2 was eventually sold via a "Commissioners Sale" to XL Investment Properties, LLC ("XL Investment"). Notice of the Commissioners Sale was published in a local newspaper on December 14, 21, and 28, 2015, and the sale occurred on February 19, 2016.

Once XL Investment received a tax sale certificate for Lot 2, a title search was conducted. On March 28, 2016, a Notice of Redemption from the tax sale was sent by XL Investment via certified mail to Trust 4340 at the LaSalle Drive address but was returned labeled "ATTEMPTED – NOT KNOWN UNABLE TO FORWARD." Ex. Vol. I p. 52. A notice of redemption for the property was also published on March 30, 2016. A notice of filing of the petition for tax deed was sent on July 21, 2016—also to the LaSalle Drive address—but was returned with a NIXIE label that read "REFUSED UNABLE TO FORWARD" and the notation "REFUSED" written on the envelope. Ex. Vol. II p. 94.

XL Investment received an order issuing the tax deed for Lot 2 on August 30, 2016. XL Investment then filed a quiet title action and, after searching for the registered agent of Indiana Land Trust Company in the Secretary of State's files, successfully notified Indiana Land Trust of the sale.[3]

On March 9, 2017, Trust 4340 filed a motion to set aside the tax deed issued to XL Investment. Among other things, the trial court determined

---

[3] It appears from the record that when Indiana Land Trust attempted to notify Midwest Investment of the quiet title action, it sent the mail to a Clark Street address with an old suite number. That envelope was returned with the scratched out notation "NO LONGER HERE." Ex. Vol. I p. 62. Mr. Dellaportas testified that as of December 2016, Trust 4340 did not have an accurate address for Midwest Investments, Inc.

SRI and the Auditor substantially complied with the tax sale notice statute, XL Investments met all statutory requirements to be entitled to the tax deed of the property, the Auditor's mailings satisfied constitutional due process, and Trust 4340's motion was untimely. Accordingly, the trial court denied Trust 4340's motion on August 9, 2018, and Trust 4340 appealed.

In a unanimous opinion, the Court of Appeals reversed on two separate grounds. *Indiana Land Trust Co. v. XL Investment Properties, LLC*, 130 N.E.3d 630, 638 (Ind. Ct. App. 2019). First, the Court of Appeals held the trial court erred by finding Trust 4340's motion to set aside the tax deed was untimely filed. *Id*. at 636. Second, the court found "the Auditor was required to search its records for a better address for Trust 4340 after the certified mail notice was returned as not deliverable." *Id*. at 638. Therefore, the court found the Auditor failed to satisfy due process and the trial court erred by denying Trust 4340's motion. *Id*. at 637, 638. On rehearing, the Court of Appeals, among other things, declined to vacate its opinion to allow the Attorney General to intervene. *Indiana Land Trust, Co. v. XL Investment Properties, LLC*, 134 N.E.3d 439, 441 (Ind. Ct. App. 2019), *on reh'g*.

XL Investment and the LaPorte County Auditor sought transfer, which we granted, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58. The State of Indiana has filed an amicus brief to defend the constitutionality of the State's tax sale notice statute. The Association of Indiana Counties, Indiana Auditors' Association, Indiana County Treasurers' Association, and SRI have also filed a joint brief of amici curiae in support of the Auditor's petition to transfer.

## Standard of Review

Where, as here, a trial court enters special findings and conclusions according to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 216 (Ind. 2012). First, we determine whether the evidence supports the findings and if so, we next determine whether the findings support the

judgment. *Id*. We neither reweigh evidence nor reassess witness credibility; we give deference to the trial court's factual findings as long as they are supported by evidence and any legitimate inferences therefrom. *Id*. at 216-17. We will only set aside the findings or judgment of the trial court if they are clearly erroneous. *Id*. at 216.

# Discussion and Decision

The basic issue presented in this case is not whether Indiana's tax sale notice statute is constitutional. As we discuss below, it is not our duty to prescribe the form of service the government should follow when certified mail is returned as undeliverable. Rather, we must ensure the basic requirements of due process are met in a particular case. Whether a county auditor *could* or *should* search its own records for a better tax sale notice address depends on the information revealed to him or her when mail is returned. Necessarily, it follows that these determinations depend on the facts and circumstances of each case.

Here, the parties have understandably challenged the constitutional fortitude of Indiana's tax sale notice statute. XL Investment and the Auditor argue that the current notice statute complies with constitutional due process requirements and, because the Auditor followed the statute, Trust 4340 was placed on proper notice of the tax sale and cannot now set aside the tax deed. Trust 4340, meanwhile, argues that it received insufficient notice and the General Assembly may not legislate away a due process requirement that an auditor must search its internal records when mail is returned.

It is wholly unclear whether the Court of Appeals opinion below actually declared the tax sale notice statute unconstitutional or if the Auditor's actions in this case simply failed to meet constitutional muster. *See Indiana Land Trust, Co.*, 130 N.E.3d at 637, *trans. granted, opinion vacated* (noting "regardless of the language of Indiana Code section 6-1.1-24-4, the Auditor is charged with knowledge of the contents of its records and is constitutionally obligated to search those records" but observing "[t]he General Assembly does not have the authority to codify away

constitutional protections" which included an auditor's search of its own records); *Indiana Land Trust, Co. v. XL Investment Properties, LLC*, 134 N.E.3d 439, 441 (Ind. Ct. App. 2019), *on reh'g, vacated* (finding the auditor's office, as an agency of the state, could adequately represent the State's position in defending the constitutionality of the statute). Observing the "longstanding principle of constitutional avoidance" that weighs against deciding constitutional questions not absolutely necessary to a merits disposition, we find a narrower path to resolution of this case. *CitiMortgage, Inc. v. Barabas*, 975 N.E.2d 805, 818 (Ind. 2012) (citing *Snyder v. King*, 958 N.E.2d 764, 768 (Ind. 2011)).

Rather than weigh in on the constitutionality of the underlying statute, we will instead focus on whether the Auditor's actions complied with minimal due process standards. Below, we explore what the Due Process Clause of the Fourteenth Amendment requires, the structure of Indiana's tax sale notice statute, and the extent to which the Auditor met minimal notice requirements. Finding that the Auditor complied with due process standards, we affirm the trial court's denial of Trust 4340's motion to set aside the tax deed for Lot 2.[4]

## I. The Due Process Clause of the Fourteenth Amendment sets minimum notice standards for tax sales of delinquent properties.

It is an "elementary and fundamental requirement" of the Due Process Clause of the Fourteenth Amendment that before it institutes an action to sell a delinquent property, "a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct.

---

[4] The Court of Appeals below found Trust 4340's motion to set aside the tax deed was timely filed. *Indiana Land Trust Co.*, 130 N.E.3d at 636. Assuming arguendo that this conclusion is correct, we need not reach this issue because of our determination that the Auditor complied with due process requirements.

2706, 2709, 77 L.Ed. 180 (1983) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). Put differently, a party that has a legally protected property interest in a particular parcel is "entitled to notice reasonably calculated to apprise him of a pending tax sale." *Id.* at 798.

Both the Supreme Court of the United States and our own Court have weighed in on what these standards entail. We will review the relevant cases from each court below.

### A. The Supreme Court of the United States has held that while actual notice is not required, notice must be given in a manner desirous of actually informing the owner.

The Supreme Court has addressed the contours of due process in several opinions over the years. For example, in *Mennonite Bd. of Missions*, a case with Hoosier origins, the Court considered a tax sale in which Elkhart County posted and published notice of a tax delinquency but failed to mail any notice to the mortgagee. The Court determined, *inter alia*, that publication and posting alone were unlikely to reach those with interest in the property. *Id*. at 799. The Court's opinion concluded that personal service or mailed notice was required for a creditor with a legal interest in a property. *Id*. The Court wrote, "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Id*. at 800 (emphasis in original). In *Mennonite Bd. of Missions*, then, a single letter of notice would have discharged the county's constitutional obligation to give notice to the party with a legal interest in the property. *Id*.

More recently in *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), the Supreme Court confronted an issue not unlike the one our Court faces today. There, a property owner became delinquent on property taxes after he got divorced and moved out of his marital home.

The government sent a certified letter to his property to notify the owner of an impending tax sale, but the letter was returned unclaimed. The government made no additional attempts to notify the owner other than publishing notice of the sale in a local newspaper. The property was eventually sold, and the owner was only notified when the purchaser delivered an unlawful detainer notice to the owner's daughter at the property. *Id*. at 223-24, 126 S.Ct. at 1712-13.

The owner filed suit alleging the government failed to give him sufficient notice of the tax sale in violation of the Due Process Clause of the Fourteenth Amendment. The issue presented to the Supreme Court was framed as "whether, when notice of a tax sale is mailed to the owner and returned undelivered, the government must take additional reasonable steps to provide notice before taking the owner's property." *Id*. at 223, 126 S.Ct. at 1712. Under the circumstances presented in *Jones*, the Supreme Court answered this question in the affirmative, finding "someone who actually wanted to alert [the property owner] that he was in danger of losing his house would do more when the attempted notice letter was returned unclaimed, and there was more that reasonably could be done." *Id*. at 238, 126 S.Ct. at 1721.

The *Jones* Court made several foundational observations to reach its result. First, the Due Process Clause of the Fourteenth Amendment requires the government to provide "notice and opportunity for hearing appropriate to the nature of the case." *Id*. at 223, 126 S.Ct. at 1712 (quoting *Mullane*, 339 U.S. at 313, 70 S.Ct. at 652).

Second, "actual notice" is not required by due process. *Id*. at 225, 126 S.Ct. at 1713. Rather, due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Id*., 126 S.Ct. at 1713-14 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 652).

Third, to assess the adequacy of a particular form of notice, a Court must balance the interest of the State against the individual interest sought to be protected by the Fourteenth Amendment. *Id*. at 229, 126 S.Ct. at 1715 (quotations omitted). So "when notice is a person's due … [t]he means

employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id*. (quoting *Mullane*, 339 U.S. at 315, 70 S.Ct. at 652).

Applying the facts of *Jones* to this framework, the Court wrote that someone desirous of actually informing a property owner that his house was subject to a tax sale would surely take "additional reasonable steps" to give notice if a mailing were returned. *Id.*, 126 S.Ct. at 1716. Because the government in *Jones* **did nothing** when the certified letter was returned as unclaimed, the Supreme Court observed that the government "should have taken additional reasonable steps to notify [the landowner], if practicable to do so." *Id*. at 234, 126 S.Ct. at 1718. The *Jones* Court stopped short, however, of prescribing any particular type or form of service. *Id*. (citing *Greene v. Lindsey*, 456 U.S. 444, 455, n.9, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982)). It followed, then, that "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id*.

Perhaps stated differently, the Supreme Court concluded the "reasonable additional steps" that must be taken when a certified letter is returned "depends upon what the new information reveals." *Id*. In the case of a certified letter returned as unclaimed, the Court posited that one viable option would have been for the government to send another letter via regular mail. *Id.*, 126 S.Ct. at 1718-19. Another practical option would have been for the government to post notice on the door of the property. *Id*. at 235, 126 S.Ct. at 1719. In the Court's view, either of these options would increase the likelihood the owner would be notified of the impending tax sale on his property. *Id*.

Particularly relevant to today's decision, the Supreme Court addressed the landowner's argument that the government should have searched either the phone book or "other government records" to reveal his new address. *Id*. at 235-36, 126 S.Ct. at 1719. But the Supreme Court did "not believe the government was required to go this far." *Id*. at 236, 126 S.Ct. at 1719. "An open-ended search for a new address—especially when the State obligates the taxpayer to keep his address updated with the tax

collector[ ]—imposes burdens on the State significantly greater than the several relatively easy options" discussed above. *Id*.

## B. Our Court's decisions echo the findings of the Supreme Court and evaluate the adequacy of notice based on the facts and circumstances of each case.

Our own Court has had the opportunity to review *Jones* under factually similar circumstances in *Sawmill Creek*, 964 N.E.2d at 213. In that case, the property owner's business name was incorrectly listed as "Saw Creek" instead of "Sawmill Creek" on several documents filed with the government. *Id*. at 214. When the property owner moved operations, addresses were updated for Sawmill Creek in the auditor's system, but not for the "Saw Creek" entity used on the property documents. *Id*. at 215. The property became delinquent. *Id*.

The county auditor sent a pre-sale notice via certified mail to the address on file for "Saw Creek," but the notice was returned as "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD." *Id.* The auditor published notice in the newspaper, on its website, and on a list posted outside of the county clerk's office. *Id*. After the property was sold, the auditor employed a title company to conduct additional research on the property, but the title company could not locate a "Saw Creek" business entity. *Id*. Two post-sale notices—one via certified mail and one via first-class mail—were again sent to the address on file, but both mailings were returned as undeliverable. *Id*. Only when the new property owner's "for sale" signs appeared on the property did the original owner become aware of the sale and sued to set aside the tax deed. *Id*. at 216.

Applying the analytical framework of *Jones* referenced above, our Court found the county auditor satisfied due process requirements because, under the circumstances of that case, "the [a]uditor's actions were reasonably calculated to provide notice to [the landowner]." *Id*. at 221. Observing "every fact relevant to whether the [a]uditor acted or failed to act 'as one desirous of actually informing' [the owner] of the pending tax sale must be considered," *id*. at 219, we found that after the certified letter

was returned as undeliverable, it would have been unreasonable for the auditor to re-send the same notice via first-class mail. *Id*. at 220. We also observed that posting notice on bare, unimproved land was not practical. *Id*. at 221. Ultimately, we were satisfied that the auditor took the required "additional reasonable steps" by engaging a title search company to search government records and the phonebook for additional addresses. *Id*.

Our Court again examined *Jones* in the case *M&M Inv. Group, LLC v. Ahlemeyer Farms, Inc.*, 994 N.E.2d 1108 (Ind. 2013). Though the facts and procedure of that case are not particularly relevant to today's decision, our Court's opinion carefully reviewed the structure and history of Indiana's tax sale statutes and the decisional law interpreting them. *Id*. at 1112-17. Focusing on our prior decision in *Elizondo v. Read*, 588 N.E.2d 501 (Ind. 1992), our Court discussed whether auditors are required to search internal records for a better address when notice to the delinquent property owner is returned. We recounted that in *Elizondo*, "due process required the auditor to search his or her own records for alternate addresses for the owner of the property." *Id*. at 1116 (citing *Elizondo*, 588 N.E.2d at 505). *See also Griffin v. Munco Assoc.*, 589 N.E.2d 220 (Ind. 1992); *Miller Reeder Co. v. Farmers State Bank of Wyatt*, 588 N.E.2d 506 (Ind. 1992). After a review of *Jones v. Flowers* and then-existing statutes, however, we called *Elizondo*'s viability—at least with respect to property owners—into question. *Id*. at 1117.

We determined that "the portion of *Elizondo* dealing with a property owner has been abrogated [by *Jones v. Flowers*] to the extent it implies an auditor may receive a notice back 'unclaimed' and then effectively sit on his or her hands and do nothing more…" *Id*. While "*Jones* would compel the additional steps of at least mailing the notice by first class mail, posting it on the front door, and/or addressing it to 'occupant'" if notice to a property owner was returned to a county auditor, our opinion deferred to the legislature's additional guidance codified at the time the opinion was handed down. *Id*.

In *M&M Investment Group*, we further observed that notice requirements are different depending on the class of interest at stake.

Whether notice was sent to a property owner or a mortgagee proved to be a consequential distinction. We observed that "[w]hile those cases relate to, inform, and persuade each other, it would be erroneous to presume that they control issues and parties beyond their own scope. Each class of interest merits its own analysis." *Id*. at 1118. Unlike *M&M Investment Group* and the remaining viable portion of *Elizondo*, the present "class of interest" is that of a property owner, not a mortgagee. As we discuss below, this distinction places *Elizondo*'s internal records search requirement outside the present facts.

\* \* \*

There are several key lessons we can learn from these decisions as we turn our focus to the present set of facts and circumstances. First, we know that the Due Process Clause of the Fourteenth Amendment "requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones*, 547 U.S. at 226, 126 S.Ct. 1708 (quotation omitted). Second, while actual notice is not required, *id.* (citation omitted), the government must take additional reasonable steps if practical when notice via certified mail is returned. *Id*. at 234, 126 S.Ct. at 1718. Third, to assess the constitutional adequacy of the means of notice employed, "the interest of the State" must be balanced against "the individual interest sought to be protected by the Fourteenth Amendment." *Id*. at 229, 126 S.Ct. at 1715 (quotation omitted). This balancing of interests depends on the class of interest at stake. *M&M Inv. Group*, 994 N.E.2d at 1118.

It follows, then, that we must evaluate the adequacy of notice afforded to Trust 4340 before the county sought to extinguish its interest in the property. As the issue is framed for our review, we must examine every fact relevant to whether the Auditor acted or failed to act "as one desirous of actually informing" Trust 4340 of the impending tax sale. *See Sawmill Creek*, 964 N.E.2d at 219.

In light of the foregoing observations, we will next evaluate the tax sale notice statutes as they currently stand and apply the present facts to this context.

## II. The notice given by the Auditor met minimal due process requirements.

Trust 4340 has launched a two-pronged attack on the tax sale deed, arguing first that the Auditor was required—or at minimum *should* have—searched its own records for a better tax sale notice address, and second, that the contents of the notice were insufficient for failing to include a common description of the property. Based on our understanding of the relevant statutes and decisional caselaw, we decline to adopt Trust 4340's arguments and find the Auditor gave adequate notice.

We will address each of Trust 4340's arguments in turn.

### A. The manner in which notice was provided was constitutionally sufficient.

Because the underlying statutes provide context and structure for each party's actions, we will start by reviewing the applicable laws for tax sales in Indiana. The General Assembly has codified the procedures and requirements to conduct a tax sale when an owner of real property becomes delinquent on property taxes. See Ind. Code § 6-1.1-24 *et seq.* Under the present statutory scheme, there are certain notice requirements that must be met before the property is sold. I.C. § 6-1.1-24-4. If notice is given and no property owner objects or steps forward to contest the sale, the property is subject to sale at a public auction. I.C. §§ 6-1.1-24-4.7, -5. After the tax sale, there is a redemption period during which a person may redeem the property for a certain sum of money. See I.C. § 6-1.1-25 *et seq.* If the property is not redeemed, the purchasing party may file a petition for the tax deed to the real property. I.C. § 6-1.1-25-4.6.

More specifically, Indiana Code section 6-1.1-24-4(b) (2015) currently provides, in relevant part:

> Not less than twenty-one (21) days before the earliest date on which the application for judgment and order for sale of real property eligible for sale may be made, the county auditor shall send a notice of the sale by certified mail, return receipt

requested, and by first class mail to:

(1) the owner of record of real property with a single owner; or
(2) at least one (1) of the owners, as of the date of certification, of real property with multiple owners;

at the last address of the owner for the property as indicated in the transfer book records of the county auditor under IC 6-1.1-5-4 on the date that the tax sale list is certified. If both notices are returned, the county auditor shall take an additional reasonable step to notify the property owner, if the county auditor determines that an additional reasonable step to notify the property owner is practical… The notice must set forth the key number, if any, of the real property and a street address, if any, or other common description of the property other than a legal description… The county auditor must present proof of this mailing to the court along with the application for judgment and order for sale. Failure by an owner to receive or accept the notice required by this section does not affect the validity of the judgment and order. The owner of real property shall notify the county auditor of the owner's correct address. The notice required under this section is considered sufficient if the notice is mailed to the address or addresses required by this section.

We can glean from this statute that (1) two notices must be sent, one by certified mail and one by first-class mail; (2) these notices must be sent to the last address on record at the date the tax sale list is certified; and (3) only if **both notices** are returned must the auditor take an additional reasonable step **if practical**. These are the circumstances that happened in this case.

Prior to 2015, however, this same section required: "If both notices are returned due to incorrect or insufficient addresses, the county auditor shall research the county auditor records to determine a more complete or accurate address." Ind. Code § 6-1.1-24-4 (2014) (repealed by P.L. 251-

2015); *see also City of Elkhart v. SFS, LLC*, 968 N.E.2d 812, 817 (Ind. Ct. App. 2012) (finding due process "requires the county auditor to search the records that it maintains"); *Hullett v. LaFevre*, 926 N.E.2d 524, 528 (Ind. Ct. App. 2010) (same); *Edwards v. Neace*, 898 N.E.2d 343, 349 (Ind. Ct. App. 2008) (same); *Reeder Assocs. II v. Chicago Belle, Ltd.*, 778 N.E.2d 828, 834 (Ind. Ct. App. 2002) (same). On this point, Trust 4340 argues the Supreme Court's decision in *Jones* did nothing to abrogate Indiana caselaw requiring an auditor to search its records for a better address. In support, Trust 4340 points to decisions that predate the current statutory scheme and would have us enshrine this "internal records search" requirement into the threshold of constitutional due process. *See, e.g., Elizondo*, 588 N.E.2d at 504; *M&M Inv. Group*, 994 N.E.2d at 1122; *City of Elkhart*, 968 N.E.2d at 817.

We decline to hold as much today. It is true that prior opinions of our Court of Appeals, including decisions handed down after *Jones*, have held "the auditor is deemed to be aware of the contents of the records maintained in its office, and due process requires the county auditor to search the records that it maintains." *City of Elkhart*, 968 N.E.2d at 817 (citation omitted). This observation tracks back to our decision in *Elizondo* where, as discussed above, we found it was "reasonable to require the auditor to search the records of his own office for other possible addresses upon the receipt of an undelivered notice." 588 N.E.2d at 505.

Recall, however, that the viable portion of *Elizondo* dealt with notice to mortgagees and we have subsequently declined to extend this analysis to different classes of interest. *See M&M Inv. Group*, 994 N.E.2d at 1118. In *M&M Investment Group*, we observed "analysis of the sufficiency of notice in a property deprivation matter under the Due Process clause of the Fourteenth Amendment turns on the 'practicalities and peculiarities of the case,' and 'will vary with circumstances and conditions.'" *Id.* (quoting *Elizondo*, 588 N.E.2d at 503). These cases have historically been assessed independently based on the class of interest at stake, *see id.*, and we see no reason to depart from that approach today.

That is not to say a county auditor is never required to search his or her internal records. Rather, an auditor's responsibility lies in what is learned

after notice is given in a particular case. *Jones*, 547 U.S. at 234, 126 S.Ct. at 1718. In addition to striking this internal-search requirement, the 2015 amendments to the tax sale notice statute also added the requirement that the auditor "take an additional reasonable step to notify the property owner, if the county auditor determines that an additional reasonable step to notify the property owner is practical." Ind. Code § 6-1.1-24-4 (2015); P.L. 251-2015.

As was the case in *Jones*, this "additional reasonable step" is based on what new information is revealed to the government. 547 U.S. at 234, 126 S.Ct. at 1718. A court will not "prescribe the form of service that the government should adopt," but rather assess whether there were additional reasonable steps that could be taken if practicable. *Id*. (cleaned up, citation omitted).

Here, the Auditor, through SRI, sent contemporaneous notice via certified and first-class mail. While the certified mail was returned to SRI, there is no evidence the first-class mail was ever returned to its sender. This meant either the mail was received by its intended recipient or simply lost to time. Nevertheless, the Supreme Court in *Jones* observed that sending notice via regular mail likely increases the chances of actual notice. *Id*. at 236, 126 S.Ct. at 1719. Given actual notice is not required, we do not think the Auditor should be left to speculate whether the first-class mail was truly delivered, especially when it was not returned to its sender.

Regardless, Trust 4340 argues the distinction between "Unclaimed" mail and mail returned as "Not Deliverable as Addressed—Unable to Forward" made notice by first-class mail unreasonable. *See Sawmill Creek*, 964 N.E.2d at 219 n.6. The first-class mail in this case, however, was sent contemporaneously with the certified letter. This is unlike the facts in *Sawmill Creek* where we made particular note that following up with first-class mail after a certified letter was returned as undeliverable would be unreasonable based on the auditor's **new** knowledge that the certified letter was not deliverable at the listed address. *See id*. at 219-20. One could reasonably assume the unreturned first-class mail in this case indicated to the Auditor that the mail was received by the intended recipient. We do

not think that under these circumstances, the Auditor was required to speculate any further.

Perhaps the circumstances would be different if both the certified letter and first-class mail were returned to SRI and the Auditor. This knowledge—that the tax notice address was more than likely incorrect—would certainly require additional reasonable steps to notify Trust 4340 if practical to do so. *See Jones*, 547 U.S. at 234, 126 S.Ct. at 1718. And perhaps under those facts, an auditor would satisfy due process by searching its internal records. But those circumstances are simply not present here. In addition to the first-class mail, the Auditor—through SRI—performed a skip trace search for a better address and published notice in the newspaper. These combined actions, at least under the circumstances present in this case, satisfy the minimal due process requirements discussed in *Jones* and subsequent caselaw in Indiana.

While the Auditor certainly *could* have done more, the Constitution does not require more than the actions taken in this case. The power to require more than the threshold requirements of due process rests squarely with the General Assembly and we decline to enter that arena today. *See id.* at 238, 126 S.Ct. at 1721.

## B. The contents of the notice substantially complied with relevant statutory requirements.

On appeal, Trust 4340 also challenges the adequacy of the notice itself. Indiana Code section § 6-1.1-24-4(b) provides, in relevant part, "The notice must set forth the key number, if any, of the real property and a street address, if any, or other common description of the property other than a legal description." In addition to the requirement that "[t]he owner of real property shall notify the county auditor of the owner's correct address," this provision provides, "The notice required under this section is considered sufficient if the notice is mailed to the address or addresses required by this section." Ind. Code § 6-1.1-24-4(b).

"The issuance of a tax deed by the trial court creates a presumption that a tax sale and all of the statutory steps leading to the issuance of the tax

deed were proper." *First Am. Title Ins. Co. v. Calhoun*, 134 N.E.3d 423, 431 (Ind. Ct. App. 2014) (citation omitted). "[T]his presumption may be rebutted by affirmative evidence showing the contrary." *Id.* (quotation omitted). As challenged here, a tax deed may be set aside if a party demonstrates that "the notices required by … IC 6-1.1-24-4 … were not in substantial compliance with the manner prescribed in those sections." Ind. Code § 6-1.1-25-16(7); *see generally Porter v. Bankers Trust Co. of California, N.A.*, 773 N.E.2d 901, 906 (Ind. Ct. App. 2002) (discussing substantial compliance with tax sale notice statutes); *Reeder Assocs. II*, 778 N.E.2d at 832-35 (same). Whether notice "substantially complied" with statutory requirements, though a "fact-sensitive determination," is a question of law. *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989).

The notice sent in this case contained a property identification number and a "so-called" brief legal description but did not contain a location and street address or a common description of the property. The trial court concluded that "although the Tax Sale notice did not include the property address or other description of the property, the Auditor and SRI still substantially complied with Indiana Code §6-1.1-24-4 [sic] by providing the pin number and legal description and could not provide any address or other description because the property was vacant." App. Vol. 2 at 26.

The evidence indicates the parcel was an undeveloped, 29 acre tract of land. The Auditor testified that vacant parcels are not assigned property addresses until improvements are made upon the land. While nothing identified as a common description or street address was listed on the notice, it read, "13-05-09-300-039 MICH CITY TOWN CENTRE SD UNIT 2 LT 2 29.827 AC." Ex. Vol. I p. 220. This description—which included the name of the development, the unit and lot number, and the exact acreage—substantially complies with the purpose of a "common description" by allowing a lay person to identify the property.

As such, this description would have alerted the owner that his property was in danger of being sold at a tax sale. This supports the trial court's conclusion that the notice substantially complied with the statute's requirements.

In light of these circumstances, the trial court's holding is supported by the evidence.

## Conclusion

We find that under the facts of this case, the LaPorte County Auditor provided notice reasonably calculated, under all circumstances, to apprise Trust 4340 of the pendency of the action and afforded them an opportunity to present their objections.

We affirm the trial court's denial of Indiana Land Trust Company's motion to set aside the tax deed.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Greg A. Bouwer
Jeff Carroll
Koransky Bouwer & Poracky, P.C.
Dyer, Indiana

ATTORNEY FOR APPELLEE XL INVESTMENT PROPERTIES, LLC
Matthew J. Hagenow
Anthony G. Novak
Newby, Lewis, Kaminski & Jones, LLP
LaPorte, Indiana

ATTORNEY FOR APPELLEE LAPORTE COUNTY AUDITOR
J. Alex Bruggenschmidt
Thomas C. Buchanan
Buchanan & Bruggenschmidt, P.C.
Zionsville, Indiana

ATTORNEYS FOR AMICUS CURIAE STATE OF INDIANA
Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Julia C. Payne
Deputy Attorney General
Indianapolis, Indiana

Kian Hudson
Deputy Solicitor General
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE THE ASSOCIATION OF
INDIANA COUNTIES, INDIANA AUDITORS' ASSOCIATION,
INDIANA COUNTY TREASURERS' ASSOCIATION, AND SRI,
INCORPORATED
Matthew T. Albaugh
Emily A. Kile-Maxwell
Faegre Drinker Biddle & Reath LLP
Indianapolis, Indiana